UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
UNITED STATES OF AMERICA,

Case No.: 15-CR-379 (PKC)


-against-


GEOVANNY FUENTES RAMIREZ,

Defendant.
------------------------------------------------------------------------X


## MEMORANDUM OF LAW IN OPPOSITION TO
## THE GOVERNMENT'S MOTIONS *IN LIMINE*

Avraham C. Moskowitz
Christopher R. Neff
Moskowitz & Book, LLP
345 Seventh Avenue, 21st Floor
New York, New York 10001
(212) 221-7999
AMoskowitz@mb-llp.com

Eylan Schulman, Esq.
SCHULMAN TRIAL, PLLC
20 Vesey Street, Suite 1400
New York, NY 10007
(212) 874-2500
Eylan@schulmantrial.com

*Attorneys for Defendant Fuentes Ramirez*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

SUMMARY OF THE ARGUMENT ....................................................................................... 2

ARGUMENT ........................................................................................................................... 4

I. THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OF UNCHARGED POLITICAL CORRUPTION AND UNCHARGED HOMICIDES............ 4

   (a) Evidence that Fuentes Ramirez Committed Politically Corrupt Offenses and Uncharged Homicides is Inadmissible as Direct Evidence of the Charged Offenses.......................... 4

   (b) Evidence of the Uncharged Homicides and Politically Corrupt Offenses is Not Admissible Under Rule 404(b)........................................................................................... 6

   (c) If Evidence of Official Corruption and Uncharged Homicides in Honduras is Not Excluded, the Defense Must Be Permitted a Fair Opportunity to Investigate ............... 14

II. THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING THE OUT-OF-COURT STATEMENTS PURPORTEDLY MADE BY DRUG TRAFFICKERS AND A HONDURAN POLICE OFFICER TO COOPERATOR LEONEL RIVERA ..................... 16

   (a) None of the Statements are co-conspirator statements under Rule 801(d)(2)(E)............ 17

   (b) Statements (1) and (5) Must Be Excluded Because Leonel Rivera, a Government Witness, Illegally Procured the Declarant's Unavailability Through Murder................. 19

   (c) Statements by CC-5, CC-7, and CC-11 are not admissible as statements against interest pursuant to Rule 804(b)(3) .......................................................................................... 21

III. THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING STATEMENTS MADE BY A HONDURAN POLITICIAN AND A HONDURAN JUDGE THROUGH THE TESTIMONY OF WITNESS-1 ................................................................................ 26

IV. THE PHOTOGRAPHS OF FIREARMS SHOULD BE EXCLUDED ............................. 26

V. EVIDENCE OF FUENTES RAMIREZ'S ELECTRONIC COMMUNICATIONS IS INADMISSIBLE.................................................................................................................. 27

VI. THE PURPORTED JAILHOUSE STATEMENTS BY FUENTES RAMIREZ TO LEONEL RIVERA MUST BE EXCLUDED UNDER *MASSIAH* BECAUSE THEY WERE PROCURED IN VIOLATION OF THE SIXTH AMENDMENT ...................................... 27

VII. STATEMENTS BY "PLUTO" ARE INADMISSIBLE.................................................. 30

CONCLUSION...................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

Cases

*Bourjaily* v. *United States*, 483 U.S. 171 (1987) .......................................................... 17

*Bruton v. United States*, 391 U.S. 123 (1968) ............................................................. 18

*Huddleston v. United States*, 485 U.S. 681 (1988) ....................................................... 6

*Hynes v. Coughlin*, 79 F.3d 285 (2d Cir. 1996) ............................................................. 7

*In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 187 (2d Cir. 1987) ................... 11

*In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1223 (E.D.N.Y. 1985) ............................... 11

*Kansas v. Ventris*, 556 U.S. 586 (2009) ......................................................................... 28

*Lee v. Illinois*, 476 U.S. 530 (1986) .............................................................................. 18

*Massiah v. United States*, 377 U.S. 201 (1964) ............................................................. 28

*Old Chief v. United States*, 519 U.S. 172 (1997) ........................................................... 11

*U.S. v. Russo*, 302 F.3d 37 (2d Cir. 2002) .................................................................... 17

*U.S. v. Yousef*, 327 F.3d 56 (2d Cir. 2003) ................................................................... 28

*United States v. Abu Jihaad*, 531 F. Supp. 2d 289 (D. Conn. 2008) ................................... 18

*United States v. Araujo*, 79 F.3d 7 (2d Cir. 1996) .......................................................... 7

*United States v. Berbal*, 62 F.3d 456 (2d Cir. 1995) ...................................................... 11

*United States v. Bermudez*, 529 F.3d 158 (2d Cir. 2008) ............................................... 12

*United States v. Brand,* 467 F.3d 179 (2d Cir. 2006) ..................................................... 7

*United States v. Carboni,* 204 F.3d 39 (2d Cir. 2000) .................................................... 5

*United States v. Clark*, 18 F.3d 1337 (6th Cir. 1994) ..................................................... 18

*United States v. Clemente*, 22 F.3d 477 (2d Cir. 1994) .................................................. 7

*United States v. Colombo*, 909 F.2d 711 (2d Cir. 1990) .................................................. 12

*United States v. Concepcion,* 983 F.2d 369 (2d Cir. 1992) ................................................ 10

*United States v. Curley*, 639 F.3d 50 (2d Cir. 2011) .......................................................... 8

*United States v. Dhinsa*, 243 F.3d 635 (2d Cir. 2001) ...................................................... 20

*United States v. Dupree*, 870 F.3d 62 (2d Cir. 2017) ........................................................ 22

*United States v. Edwards*, 342 F.3d 168 (2d Cir. 2003) .................................................... 7

*United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980) .................................................... 8

*United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999) ............................................ 17, 18

*United States v. Gonzalez,* 110 F.3d 936 (2d Cir. 1997) .................................................... 5

*United States v. Gordon,* 987 F.2d 902 (2d Cir. 1993) ....................................................... 8

*United States v. Gupta*, 747 F.3d 111 (2d Cir. 2014) .................................................... 22, 24

*United States v. Jones*, 16 F.3d 487 (2d Cir. 1994) .......................................................... 12

*United States v. Katsougrakis*, 715 F.2d 769 (2d Cir. 1983) ............................................ 22

*United States v. LaFlam,* 369 F.3d 153 (2d Cir. 2004) ....................................................... 7

*United States v. Lang*, 589 F.2d 92 (2d Cir. 1978) ........................................................... 25

*United States v. Lumpkin*, 192 F.3d 280 (2d Cir. 1999) .................................................... 22

*United States v. Mercado*, 573 F.3d 138 (2d Cir. 2009) .................................................... 5

*United States v. Montoya*, No. 15 Cr. 378 (S.D.N.Y.) ...................................................... 29

*United States v. O'Connor*, 580 F.2d 38, 40 (2d Cir. 1978) .............................................. 8

*United States v. Peterson*, 808 F.2d 969 (2d Cir. 1987) .................................................... 8

*United States v. Pipola*, 83 F.3d 556 (2d Cir. 1996) .......................................................... 5

*United States v. Pitre*, 960 F.2d 1112 (2d Cir. 2003) ........................................................ 7

*United States v. Quattrone,* 441 F.3d 153 (2d Cir. 2006) ................................................ 11

*United States v. Quinones,* 511 F.3d 289 (2d Cir. 2007) .................................................. 10

*United States v. Salvador*, 820 F.2d 558 (2d Cir.) .......................................................... 23

*United States v. Scott*, 677 F.3d 72 (2d Cir. 2012) ....................................................... 7

*United States v. Tellier*, 83 F.3d 578 (2d Cir.1996) ...................................................... 18

*United States v. Towne,* 870 F.2d 880 (2d Cir. 1989) ..................................................... 5

*United States v. White*, 116 F.3d 903 (D.C. Cir. 1997) ............................................... 20

## PRELIMINARY STATEMENT

Defendant Geovanny Fuentes Ramirez ("Fuentes Ramirez") submits this memorandum of law in opposition to the Government's motions *in limine*.

The Government seeks to introduce evidence that the government of Honduras is corrupt and is involved in the narcotics trade. The Government further seeks to introduce evidence that Fuentes Ramirez was involved in a series of uncharged narcotics-related homicides (the "Uncharged Homicides") in Honduras, about which no discovery has been provided. Both categories of evidence must be excluded as irrelevant and unfairly prejudicial, and because the defense has not been afforded an opportunity to investigate in Honduras and to compel the testimony of the "corrupt" government officials Fuentes Ramirez is accused of having bribed, and who allegedly conspired with him to engage in the narcotics trade.

The Government further seeks to admit for their truth out-of-court statements by "former drug traffickers," Honduran government officials, and a member of the Honduran National Police. This evidence is impermissible hearsay and must be excluded—and two of the statements must also be excluded because the witness through whom the Government seeks to introduce them murdered the declarant, rendering him unavailable to be cross-examined. Finally, the Government seeks to admit photographs depicting guns, which it seized from Fuentes Ramirez's cell phone. The photographs do not depict Fuentes Ramirez or any of his alleged co-conspirators. Accordingly, and because the record at trial will show that Fuentes Ramirez is legally licensed and permitted by Honduran authorities to possess handguns and automatic weapons, the photographs have little relevance to any issue in this case and admitting them would be unduly prejudicial and misleading to the jury. The photographs should therefore be excluded.

Finally, the Government will seek to introduce jailhouse statements Leonel Rivera claims to have elicited from Fuentes Ramirez outside the presence of his counsel.  Because these statements were elicited in violation of the defendant's Sixth Amendment rights, the Government should be barred from questioning Lionel Rivera about them or otherwise attempting to admit them into evidence.  In the alternative, and at a minimum, the Court should hold a pretrial hearing at which Leonel Rivera would be required to testify about the circumstances surrounding his alleged conversations with Mr. Fuentes Ramirez.

## <u>SUMMARY OF THE ARGUMENT</u>

Evidence of Honduran government corruption is irrelevant to the charges against Fuentes Ramirez, and would, if admitted, prejudice Fuentes Ramirez unfairly by suggesting to the jury that he is exceptionally well-connected to powerful and dangerous international figures, and that he must therefore himself be a dangerous criminal, regardless of the quantum of proof that he engaged in any of the charged offenses.

The Government's effort to introduce evidence of Fuentes Ramirez's alleged participation in five drug-related murders in Honduras (the "Uncharged Homicides") must be rejected for similar reasons.  The Uncharged Homicides are not relevant to the charges against Fuentes Ramirez in this case, but are instead offered as improper character evidence to show that he is a dangerous criminal.  This evidence, which is unfairly prejudicial, must also be rejected because the Government has failed to provide any discovery concerning the Uncharged Homicides, or even any evidence that they occurred, other than the uncorroborated statements of a cooperating witness, Devis Leonel Rivera Maradiaga ("Leonel Rivera")—himself a serial murderer, whose statements are of questionable reliability.

The purported evidence of narcotics-related corruption and Leonel Rivera's uncorroborated allegations concerning the Uncharged Homicides should also be excluded because the defense has not been afforded an opportunity to investigate those allegations in Honduras, or to obtain the testimony of CC-4 and other Honduran government officials, in order to refute the uncorroborated testimony of the Government's cooperating witness.

The Government further seeks to admit statements allegedly made to Leonel Rivera and "Witness-1" by "former drug traffickers," Honduran government officials, and a member of the Honduran National Police. This evidence must be excluded as hearsay. Several of the out-of-court statements are attributed to Metro and must also be excluded because Leonel Rivera, who is now a Government agent, caused Metro's unavailability by murdering him, thus making it impossible for the defense to impeach Leonel Rivera through Metro's testimony and depriving the defendant of his right to confront Metro.

The Government seeks to admit certain photographs depicting guns, which it seized from Fuentes Ramirez's cell phone. Because Fuentes Ramirez is legally licensed and permitted to possess the weapons depicted, the photographs have little relevance to any issue in this case and admitting them would be unfairly prejudicial and misleading to the jury. The photographs should therefore be excluded.

Finally, the Government seeks to introduce evidence concerning jailhouse statements Fuentes Ramirez purportedly made to Leonel Rivera while in custody at the MCC. These jailhouse statements should be precluded because Fuentes Ramirez's Sixth Amendment rights were violated when Leonel Rivera, a government agent, approached Fuentes Ramirez within the MCC and engaged him in conversation with the intent to elicit incriminating

statements, in the absence of Fuentes Ramirez's attorney and in violation of Fuentes Ramirez's Sixth Amendment rights.

## ARGUMENT

### I. THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OF UNCHARGED POLITICAL CORRUPTION AND UNCHARGED HOMICIDES

#### (a) Evidence that Fuentes Ramirez Committed Politically Corrupt Offenses and Uncharged Homicides is Inadmissible as Direct Evidence of the Charged Offenses

The Government makes staggering accusations against high-ranking members of the Honduran Government, including CC-4, a judge, and a high-ranking member of the National Police, claiming they were complicit in a drug-trafficking operation involving Fuentes Ramirez—and it accuses Fuentes Ramirez of having unlawfully used drug proceeds to fund political campaigns and to bribe politicians, judges, and law enforcement officers (the "Politically Corrupt Offenses"). Notwithstanding the Government's burden to prove that the charged narcotics conspiracy existed, the evidence related to acts of political corruption in Honduras is only offered to paint Fuentes Ramirez in the worst possible light in front of the jury and to distract the jury with uncharged conduct. Whether the Honduran government is corrupt— and whether Fuentes Ramirez himself committed Politically Corrupt Offenses—has no bearing on whether Fuentes Ramirez is guilty of offenses charged in the Indictment. Nor do Lionel Rivera's unsupported allegations that Fuentes Ramirez committed the Uncharged Homicides in Honduras have any bearing on whether Fuentes Ramirez conspired to import narcotics into the United States, or whether he possessed weapons in the course of that conspiracy. Evidence that Fuentes Ramirez committed the Politically Corrupt Offenses and the Uncharged Homicides should therefore be excluded.

As an initial matter, evidence concerning the Politically Corrupt Offenses and the Uncharged Homicides (collectively, the "Uncharged Offenses") should be considered under the analytical framework applicable to uncharged criminal activity under Rule 404(b), rather than the framework applicable to direct evidence of the charged offenses.  In this Circuit, "evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni,* 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States v. Gonzalez,* 110 F.3d 936, 942 (2d Cir. 1997)); *see also United States v. Towne,* 870 F.2d 880, 886 (2d Cir. 1989).

"One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case. Such proof may also be used to help the jury understand the basis for the co-conspirators' relationship of mutual trust. *United States v. Pipola*, 83 F.3d 556, 565 (2d Cir. 1996) (citations omitted).  However, for uncharged acts to be admissible as "background" to a charged conspiracy, "some particular aspect of the background or the relationship of mutual trust must be in issue and the proffered evidence must be particularly relevant to that issue." *United States v. Mercado*, 573 F.3d 138, 144 (2d Cir. 2009) (Droney, D.J., dissenting).

Here, the Government does not need to introduce evidence that Fuentes Ramirez committed the Uncharged Offenses in order to prove the charged conspiracy.  The Government apparently expects to prove through cooperator testimony and other direct evidence that Fuentes Ramirez personally operated a cocaine laboratory and personally arranged for the transportation and distribution of large quantities of cocaine into the United States.  If accepted, that evidence

would be more than sufficient to convict on the charged conspiracy, without the addition of evidence connecting the defendant to Uncharged Homicides or Politically Corrupt Offenses in Honduras. Nor do the Uncharged Offenses bear directly on any disputed aspect of the relationships underlying the alleged conspiracy. Put simply, the Government's proposed evidence that Fuentes Ramirez contributed to governmental corruption in Honduras, and that he committed Uncharged Homicides in that country, is Rule 404(b) evidence—not direct evidence of the offenses alleged in the Indictment or "background" material without which those offenses cannot be established or placed in context.

### (b) Evidence of the Uncharged Homicides and Politically Corrupt Offenses is Not Admissible Under Rule 404(b)

The Government argues, in the alternative, that evidence of the Uncharged Homicides and Politically Corrupt Offenses is admissible under Rule 404(b). But this alternative argument also fails, because neither the Uncharged Homicides nor any specific act of corruption demonstrates motive, opportunity, mistake, or lack of accident, or any other disputed issue concerning the crimes alleged in the Indictment. *See* Fed.R.Evid.404(b).

Evidence proffered under Rule 404(b) must meet three basic criteria before it can be admitted at trial: (a) it must be offered for a proper purpose, (b) it must be relevant under Rule 402, and (c) the probative value must substantially outweigh the danger of unfair prejudice. *See Huddleston v. United States*, 485 U.S. 681, 691-92 (1988). None of those prerequisites has been met with regard to the Uncharged Offenses.

### 1. The Uncharged Offenses are Not Offered for, or Probative of, a Proper Purpose Under Rule 404(b)

Rule 404(b) permits the introduction of uncharged acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of

accident." Fed. R. Evid. 404(b)(2); s*ee Hynes v. Coughlin*, 79 F.3d 285, 290 (2d Cir. 1996).  To

be admissible as proof of a defendant's intent or knowledge, the uncharged acts must be similar

to the crimes to be tried. *United States v. Araujo*, 79 F.3d 7, 8 (2d Cir. 1996), *cert. denied*, 519

U.S. 888 (1996); *United States v. Clemente*, 22 F.3d 477, 482-83 (2d Cir. 1994).  Rule 404(b)

specifically prohibits the introduction of evidence of a "crime, wrong, or other act" "to prove a

person's character in order to show that on a particular occasion the person acted in accordance

with the character." Fed. R. Evid. 404(b)(1); *see Coughlin*, 79 F.3d at 290 ("Evidence of other

acts is not admissible to prove that the actor had a certain character trait, in order to show that on

a particular occasion he acted in conformity with that trait.").  Thus, even under the Second

Circuit's "inclusive" approach to other act evidence, such evidence is not admissible if: (1) it is

offered to show a defendant's character or for some other improper purpose; (2) it is not relevant

to a consequential issue at trial; or (3) its probative value is substantially outweighed by its

possible prejudice. *See United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003) (citing

*United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 2003)).

       Rule 404(b) requires a higher and more-specific quantum of relevance than is

required by the general Rule 401 standard, and not all evidence that is relevant under Rule 401 is

admissible under Rule 404(b).  Rather, to be admissible, other act evidence must be "relevant to

an issue *in dispute*." *United States v. Scott*, 677 F.3d 72, 81 (2d Cir. 2012) (emphasis in original).

In other words, the prior act must be probative of a disputed issue at trial.  For example, when

prior bad act evidence is offered to prove a defendant's intent or knowledge, the relevant

intention underlying the prior crime must be similar to that underlying the charged offense.

*United States v. LaFlam,* 369 F.3d 153, 156 n. 1 (2d Cir. 2004) (*per curiam*); *see also United*

*States v. Brand,* 467 F.3d 179, 197 (2d Cir. 2006) (government must show "similarity or some

7

connection" of prior act evidence to charged crime, in order to establish that the prior act is relevant to a disputed element, such as intent); *United States v. Gordon,* 987 F.2d 902, 908 (2d Cir. 1993) (probative value of other-act evidence depends largely on whether or not there is a "close parallel" between the crime charged and the acts shown). In other words, the prior act conduct the Government seeks to admit must be "sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge inference advocated by the proponent of the evidence." *Gordon,* 987 F.2d at 908 (*citing United States v. Peterson*, 808 F.2d 969, 974 (2d Cir. 1987)).

The heightened relevance required by Rule 404(b) is not negated by the Second Circuit's "inclusionary" approach. *United States v. Figueroa*, 618 F.2d 934, 940 n.2 (2d Cir. 1980). To the contrary, the Government's burden remains high: it must clearly articulate how proffered prior act evidence fits into a chain of logical inferences and that it is specifically offered for a proper purpose. *See Scott*, 677 F.3d at 81 ("[T]he prosecutor must show that the evidence is relevant, and there is no presumption that it is.") (quoting *United States v. O'Connor*, 580 F.2d 38, 40 (2d Cir. 1978); *see also United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) (explaining that admission of 404(b) evidence is an abuse of discretion "if the evidence is not sufficiently similar to the charged conduct or if the chain of inferences necessary to connect the evidence with the ultimate fact to be proved is unduly long.") (internal citations omitted).

Here, the Government has not identified any issue in controversy to which any aspect of the Uncharged Offenses is specifically relevant. That alone is a sufficient basis to exclude evidence concerning the Uncharged Offenses. Indeed, the absence of any apparent relevance to the charged crimes lays bare the Government's true purpose in introducing the Uncharged Offenses: they wish to portray Fuentes Ramirez as a politically-connected serial

murderer, whose influence within the Honduran government and connection to corrupt officials make him particularly dangerous, and to suggest that those traits and affiliations make him more likely to have committed the offenses with which he has actually been charged.

In considering whether the Government intends to use the Uncharged Homicides for a proper purpose, it is noteworthy that the only evidence that the Uncharged Homicides even occurred is the uncorroborated word of Leonel Rivera, the serial murderer upon whose testimony the Government intends to rely at trial.  The Government has not provided the names of the alleged victims, has produced no police reports or witness statements, and has failed to disclose in discovery any investigative files or documentary evidence of any kind.  Surely, if the Government intended that the jury rely on the Uncharged Homicides to find a required element of a charged offense, the Government would do more to establish that the events in question actually occurred.  The Government's decision to instead rely on innuendo and on the unsupported testimony of an admitted international drug dealer and mass murderer is telling.  Put simply, the purpose of the Uncharged Homicides is to frighten the jury, to paint Fuentes Ramirez in the worst possible light, to equate him with Leonel Rivera, the mass murderer on whose testimony the Government's case is dependent, and to deprive the defendant of the ability to defend himself against the charges in the indictment, by inviting the jury to convict him on the basis of uncharged conduct.

The Government's approach to discovery concerning the Uncharged Homicides is also noteworthy because it reveals the fact that those uncharged offenses are irrelevant to any disputed issue.  If the Government believed that the Uncharged Homicides were probative of any issue properly to be decided by the jury, it would doubtless have investigated the Uncharged Homicides thoroughly and produced the type of documentary and forensic evidence it typically

produces in homicide cases prosecuted in this District.  Instead, the Government conducted no investigation whatsoever—or at least none that it has revealed to the defense.  Indeed, the defense only recently became aware that Fuentes Ramirez is alleged to have committed Uncharged Homicides, and, as already noted, the Government has yet to produce any evidence to corroborate confessed serial murderer and drug trafficker Lionel Rivera's claims concerning them.

The Government has not identified with specificity any disputed fact about the charged offenses to which any aspect of the Uncharged Homicides or the Politically Corrupt Offenses is relevant.  Nor is any aspect of the Uncharged Offenses probative of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, lack of accident, or any other disputed element of the charged offenses.  Evidence of the Uncharged Offenses is therefore inadmissible under Rule 404(b).

> 2. The Uncharged Offenses Must be Excluded under Rule 403 Because Their Probative Value is Far Outweighed by Their Unfairly Prejudicial Effect

To the extent the Uncharged Offenses are offered for a proper purpose, and that they are marginally relevant to an issue in dispute, they must nevertheless be precluded under Rule 403 because they are far more prejudicial than probative.

Regardless of whether uncharged acts are alleged to be direct evidence of the conduct charged or whether admission is instead sought pursuant to Rule 404(b), the evidence must be excluded if it does not satisfy the balancing test set forth in Federal Rule of Evidence 403.  *United States v. Quinones,* 511 F.3d 289, 309 (2d Cir. 2007); *United States v. Concepcion,* 983 F.2d 369, 392 (2d Cir. 1992).  "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing

evidentiary alternatives . . . [W]hen a court considers' whether to exclude on grounds of unfair prejudice,' the 'availability of other means of proof may . . . be an appropriate factor.'" *Old Chief v. United States*, 519 U.S. 172, 184 (1997) (quoting Advisory Committee's Notes on Fed. R. Evid. 403).

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged . . . 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id*. at 180-81 (internal quotation and citation omitted); *United States v. Quattrone,* 441 F.3d 153, 186 (2d Cir. 2006) (Such prejudice "may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant."). The Second Circuit has also advised that, in terms of unfair prejudice, evidence must be excluded that "unduly inflame[s] the passion of the jury, confuse[s] the issues before the jury, or inappropriately lead[s] the jury to convict on the basis of conduct not at issue in the trial." *Quattrone,* 441 F.3d at 186.

Rule 403 applies to all evidence, whether styled as "background" or as direct evidence of a charged offense, and it dictates that all evidence which is more prejudicial than probative must be excluded. *United States v. Berbal*, 62 F.3d 456, 463 (2d Cir. 1995). "Exclusion of evidence of low probative value is particularly appropriate when admission would result in expenditure of substantial trial time and jury confusion." *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1223, 1255-56 (E.D.N.Y. 1985) *aff'd sub nom. In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 187 (2d Cir. 1987).

Although "[d]istrict courts analyzing evidence under Rule 403 should consider whether a limiting instruction will reduce the unduly prejudicial effect of the evidence so that it may be admitted," the Court must likewise be cognizant that such limiting instructions may be insufficient to cure the prejudice. *See United States v. Bermudez*, 529 F.3d 158, 169-70 (2d Cir. 2008). *See also Figueroa*, 618 F.2d at 943 ("[T]he balancing required by Rule 403 would not be needed if a limiting instruction always insured that the jury would consider the evidence only for the purpose for which it was admitted. Giving the instruction may lessen but does not invariably eliminate the risk of prejudice notwithstanding the instruction."). The presumption that juries follow limiting instructions "evaporates where there is an overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense." *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994); *see also United States v. Colombo*, 909 F.2d 711, 715 (2d Cir. 1990) (finding jury unable to dispassionately consider evidence of rape and sodomy admitted as "background" in a trial for RICO conspiracy and narcotics violations).

The Government has not identified a proper purpose for the introduction of the Uncharged Offenses: they are neither necessary to prove the background or existence of the charged narcotics conspiracy nor relevant to any aspect of the charged substantive offenses. To the contrary, by introducing testimony that he committed five murders, the Government hopes to lead the jury to the conclusion that Fuentes Ramirez has a propensity toward violence, thereby prejudicing the jury against him and causing the jury to convict regardless of the weakness of evidence related to the crimes charged. Prejudice of that kind is exactly what Rule 403 is intended to protect against.

Equally importantly, any vanishing probative value the Uncharged Offenses might have is vastly outweighed by the unfair prejudice that would be created if they were

admitted into evidence.  Apparently in recognition of that fact, the Government argues that the Uncharged Offenses are not "not unduly prejudicial relative to other proof the Government expects to offer"—i.e., that evidence of uncharged crimes should be admitted, regardless of its prejudicial effect and lack of relevance, whenever the direct evidence of an offense is particularly damning. (Gov't Mem. At 19.)  The Government's proposed test is not the test required by law and by Rules 401, 403, and 404(b), under which the Government's evidence of Uncharged Offenses must be excluded.

Fuentes Ramirez and his counsel have been provided with very little information about the Uncharged Homicides, making it impossible to present a defense to them—or even to determine whether they ever occurred, or whether they are mere fabulation on the part of the Government's star witness, himself a drug trafficker and confessed murderer of at least 78 people.  The prejudicial effect of permitting the Government, through that witness, to accuse Fuentes Ramirez of five murders about which no discovery has been provided, and about which the defense has not been able to conduct any form of investigation, would be devastating to Fuentes Ramirez's ability to defend himself against the charges in the Indictment.  Indeed, the fact that so little about the Uncharged Homicides is known would make their admission particularly devastating and particularly unfair.  Because Fuentes Ramirez has not been provided with any discovery about the Uncharged Homicides, he is entirely bereft of a defense to them, or of information necessary to impeach or contradict Lionel Rivera's testimony about them.  When the jury observes that Fuentes Ramirez has no defense to Lionel Rivera's accusation that he committed five Uncharged Homicides, it likely will conclude that his defenses to the charged offenses are similarly, if less obviously, deficient.  Thus, admitting evidence of the Uncharged

Homicides would effectively invite the jury to reject wholesale Fuentes Ramirez's defenses to the crimes for which he now faces trial.

Admitting evidence of the Politically Corrupt Offenses would be similarly damaging to Fuentes Ramirez's ability to present a defense—and would be unfairly prejudicial for similar reasons. If the jury believes that Fuentes Ramirez has corrupted the executive and judicial branches of the Honduran government, as the Government now alleges (but for which it has failed to charge him with an offense), the jury is highly likely to reject every piece of defense evidence that is sourced from or tied to Honduras as the product of corruption, even in the absence of any legitimate basis to question the authenticity of the defense's documentary evidence or the truthfulness of its witnesses.

The devastating nature of the unfair prejudicial effect admission of the Uncharged Offenses would have on Fuentes Ramirez's ability to present a defense to the charges against him cannot be cured through a limiting instruction. No limiting instruction could properly ensure that the jury would not be prejudiced or misled into finding the defendant guilty on improper grounds, either because of the emotional impact of the Uncharged Homicides or because the Government had established, through the Uncharged Offense evidence, his criminal propensity and characteristic willingness to participate in a wide variety of unlawful acts. *See Old Chief*, 519 U.S. at 180-81. Evidence of the Uncharged Offenses must therefore be excluded.

### (c) If Evidence of Official Corruption and Uncharged Homicides in Honduras is Not Excluded, the Defense Must Be Permitted a Fair Opportunity to Investigate

An additional critical problem with the admissibility of the evidence of alleged "narcotics-related corruption" in Honduras, and the Government witness's uncorroborated allegations that Fuentes Ramirez participated in a series of homicides in that country, is that

14

Fuentes Ramirez has not had an opportunity to investigate those allegations or prepare a defense to the accusations.

To defend against the allegations, Mr. Fuentes Ramirez will have to apply for Letters Rogatory seeking to take the testimony of the Honduran police officers who investigated the Uncharged Homicides and the governmental officers and elected officials who allegedly received bribes from the defendant and allegedly provided protection for his narcotics business.[1] Absent such an opportunity, the defendant will be denied the opportunity to present a defense and will be denied a fair trial.  In that regard, it should be noted that the Honduran government has publicly and repeatedly denied the allegations of corruption and has stated that the testimony of Leonel Rivera was motivated by his desire to take revenge against CC-4 for his crackdown on drug trafficking and by his desire to curry favor with the U.S. government to get a reduced sentence.[2]

Further, if the defendant is successful in obtaining evidence related to the Uncharged Homicides and the evidence and testimony needed to refute the allegations of political corruption, the result will be several "trials within a trial" about who committed the Uncharged Homicides and about the allegedly corrupt nature of the Honduran Government and its relationship to international drug traffickers, thereby distracting jurors from their actual task under the law— to decide Fuentes Ramirez's guilt on the charged offenses.

---

[1] The defense could not previously have sought letters rogatory or otherwise attempted to investigate the Uncharged Offenses, because the Government did not reveal the existence of those crimes, or its intent to offer evidence of them at trial, prior to filing its Motions *in Limine*.

[2] *See*, *e.g.*, José de Córdoba, "Honduran President Implicated in Drug Trade," The Wall Street Journal, Jan 10, 2021, *available at* https://www.wsj.com/articles/honduran-president-hernandez-implicated-in-drug-trade-11610254811 (last visited January 10, 2021) (quoting the Honduran government describing the Government's allegations as "100% false" and "based on lies of confessed criminals who seek revenge and to reduce their sentences.")  A true and accurate copy of this Wall Street Journal article is annexed to the accompanying Affirmation of Avraham C. Moskowitz as Exhibit 1.

In sum, the Court should preclude the Government from introducing the highly prejudicial and largely irrelevant evidence of the Uncharged Homicides and of alleged corruption in the Honduran Government.  Should the Court rule that the Government will be permitted to introduce the evidence of the Uncharged Homicides and of alleged corruption involving officials of the Honduran Government, Fuentes Ramirez will prepare and submit a request for Letters Rogatory to seek documentary and testimonial evidence from the Honduran Police officers who investigated the Uncharged Homicides and to take the depositions of CC-4 and the other Honduran officials named in the Government's motion who allegedly participated in the corrupt scheme.  The process will require a substantial adjournment of the trial.  According to the U.S. Embassy in Tegucigalpa, Honduras, Letters Rogatory typically take from 6 months to a year to execute in that country.[3] Only after the defense has had an opportunity to investigate the allegations and to obtain evidence refuting the allegations will Mr. Fuentes Ramirez be assured of a fair trial as required by our Constitution.

## II. THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING THE OUT-OF-COURT STATEMENTS PURPORTEDLY MADE BY DRUG TRAFFICKERS AND A HONDURAN POLICE OFFICER TO COOPERATOR LEONEL RIVERA

The Government seeks to admit six out-of-court statements by drug traffickers and a Honduran police officer as co-conspirator statements pursuant to Rules 801(d)(2)(E) and 804(b)(3) through the testimony of Leonel Rivera.[4]  Each of these out-of-court statements is inadmissible hearsay and should be excluded at trial—and two of them must be excluded for the

---

[3] *See* <u>Letters Rogatory</u>, U.S. Embassy Tegucigalpa, Honduras, *available at* https://hn.usembassy.gov/wp-content/uploads/sites/109/2015/12/letters_rogatory_acs.pdf (last visited January 22, 2021)

[4] For convenience, the out-of-court statements in this section are referred to herein by the numbers used by the Government at Pages 27 through 29 of its Memorandum.

additional reason that the Government's star witness, through whom the Government seeks admission, procured the declarant's unavailability by murdering him.

### (a) None of the Statements are co-conspirator statements under Rule 801(d)(2)(E)

Rule 801(d)(2)(E) provides that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and was made by the party's co-conspirator during and in furtherance of the conspiracy."  To admit a statement under this rule, a district court must find two facts by a preponderance of the evidence: first, that a conspiracy that included the defendant and the declarant existed; and, second, that the statement was made during the course and in furtherance of that conspiracy.  *Bourjaily* v. *United States*, 483 U.S. 171, 175 (1987); *United States* v. *Gigante*, 166 F.3d 75, 82 (2d Cir. 1999).  Additionally, the Court "in each instance must find the existence [between the defendant and the declarant] of a specific criminal conspiracy [to do that criminal act.]"  *U.S. v. Russo*, 302 F.3d 37 (2d Cir. 2002), *citing United States v. Gigante,* 166 F.3d at 82.

The Government's expansive view on co-conspirator statements would improperly allow the admission of any statement by any member of a drug trafficking organization within Honduras, regardless of the absence of a nexus between the declarant, Leonel Rivera and Fuentes Ramirez.  Co-conspirator statements are inadmissible when the speaker and defendant were not jointly engaged in the criminal venture that was being advanced by the speaker.  *U.S. v. Russo*, 302 F.3d at 44.

In *Gigante*, the Second Circuit outlined conditions for when co-conspirator statements are admissible as party admissions.  *Id.*  "The point of the observation in *Gigante* was that a declarant's statement made in furtherance of a criminal act—a murder in that case—is not admissible against the defendant under the co-conspirator exception unless the defendant was

associated with the declarant in a conspiracy or joint venture having that criminal act as its objective.  An association between the defendant and the declarant in some other venture—and in particular a general association between them [as drug traffickers]—will not suffice." *Id*.

As the Second Circuit has repeatedly recognized, alleged co-conspirator's hearsay statements are "presumptively unreliable and, for such statements to be admissible, there must be some independent corroborating evidence of the defendant's participation in the conspiracy." *United States v. Tellier,* 83 F.3d 578, 580 (2d Cir.1996), *quoting United States v. Clark,* 18 F.3d 1337, 1341–42 (6th Cir. 1994) ("Since *Bourjaily,* all circuits addressing the issue have explicitly held absent *some* independent, corroborating evidence of defendant's knowledge of and participation in the conspiracy, the out-of-court statements remain inadmissible."). Accordingly, though the Court may consider the statement itself in determining whether a conspiracy existed and thus whether a statement is admissible as the statement of a co-conspirator, "there must be some corroborating evidence *independent* of the statements regarding the existence of the conspiracy and the defendant's participation in it."  *United States v. Abu Jihaad*, 531 F. Supp. 2d 289, 296 (D. Conn. 2008) (emphasis in original).  "The quantum of independent evidence needed to corroborate the existence of a conspiracy necessarily is dependent on the totality of circumstances, including the strength of the hearsay statements themselves."  *Abu Jihaad*, 531 F. Supp. 2d at 296.  "[T]he arrest statements of a codefendant have traditionally been viewed with special suspicion.  Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence."  *Lee v. Illinois,* 476 U.S. 530, 541 (1986) (internal quotation marks omitted); *see also Bruton v. United States,* 391 U.S. 123, 136 (1968).

The Statements the Government seeks to admit through Leonel Rivera are hearsay statements by alleged drug traffickers CC-1, CC-5, CC-7, and CC-11.  The Government has proffered no independent, corroborating evidence to substantiate the alleged co-conspirator statements the Government seeks to introduce, or to establish that the statements were made in furtherance of a conspiracy involving Fuentes Ramirez.  In the absence of corroborating proof, the jury will be left to rely solely on the word of convicted murderer and drug-trafficker Leonel Rivera, who has nothing to lose, and everything to gain, in testifying favorably for the Government.  Since there is absolutely no corroborating evidence, *independent* of the alleged co-conspirator statements—which would be intrinsically unreliable if admitted through the declarants, and are doubly so when recounted, as hearsay, by unreliable and self-interested witness Leonel Rivera—the statements should be precluded.

### (b) Statements (1) and (5) Must Be Excluded Because Leonel Rivera, a Government Witness, Illegally Procured the Declarant's Unavailability Through Murder

Two of the statements the Government seeks to admit must be excluded because the Government's star witness procured the witness's unavailability by murdering him, and because that same witness now wishes to gain personal advantage by testifying to his victim's out-of-court statements.  Indeed, Leonel Rivera may already have begun working with the Government by the time he murdered the witness.

The alleged declarant in Statements (1) and (5) was Metro, one of the 78 murder victims of Leonel Rivera, the Government's star cooperating witness.  Because Leonel Rivera caused Metro's unavailability, Fuentes Ramirez cannot confront him about his alleged statements, the jury will not be able to evaluate Metro's credibility, and the defense will be left without an effective way to challenge the testimony of Leonel Rivera.  In the interests of fairness

and not permitting Leonel Rivera to benefit from his wrongdoing, Statements (1) and (5) should be precluded.

In October 2013—around the time that he became a Government informant—Leonel Rivera paid one of his assassins $30,000 to kill Metro, whose statements the Government now seeks to introduce through his murderer.[5]  Specifically, the Government's allegations related to Fuentes Ramirez importing cocaine into Miami, running a cocaine laboratory, and committing violence are supported primarily, if not exclusively, by statements Leonel Rivera claims Metro made before he was murdered.

The principle that no party may gain an advantage through his own wrongdoing is fundamental to our law.  Indeed, that principle underlays Fed. R. Evid. 804(b)(6), which provides for the admission of hearsay statements against a party that wrongfully procured the declarant's unavailability to testify.  The purpose of Rule 804(b)(6), as the advisory committee to the Federal Rules of Evidence stated, was to enact a "prophylactic rule to deal with abhorrent behavior which strikes at the heart of the system of justice itself."  Fed.R.Evid. 804(b)(6), notes of advisory committee on 1997 amendments (citation and quotation marks omitted).  Similarly, it is well established that a defendant who murders a witness waives by his misconduct his otherwise sacrosanct right of confrontation, permitting introduction of his victim's hearsay statements.  *See*, *e.g.*, *United States v. Dhinsa*, 243 F.3d 635, 652 (2d Cir. 2001) (collecting cases); *United States v. White*, 116 F.3d 903, 911 (D.C. Cir. 1997) ("It is hard to imagine a form of misconduct more extreme than the murder of a potential witness.  Simple equity supports a forfeiture principle, as does a common sense attention to the need for fit incentives.").  These

---

[5] Leonel Rivera murdered Metro in or around October 2013 and was working with the Government no later than November of that year.  The defense has not been able to determine whether Leonel Rivera had already begun working with the Government when he ordered Metro's killing, or whether he ordered that murder immediately before he became a Government agent.

same considerations require that the Government not be permitted to introduce Metro's statements through his murderer's testimony.  That Leonel Rivera is a witness (or at most the agent of a party) rather than a party to this action does not make his actions in murdering Metro any less abhorrent to the justice system.  Nor does his status as a cooperating witness lessen the public policy interest in ensuring he does not profit from his wrongdoing.  To permit Leonel Rivera to use his victim's unavailability to his advantage, by testifying to purported statements by Metro that will advance the Government's case (and thus Leonel Rivera's own bid for favorable treatment as a cooperator) would be inequitable and unjust.  That injustice would be even greater if Leonel Rivera procured the murder while working for the Government, as might well have been the case.

By murdering Metro, Government witness Leonel Rivera made it impossible for the defense to examine Metro in order to impeach Leonel Rivera's testimony about out-of-court statements allegedly made by Metro.  The Government should not be permitted to introduce hearsay statements of an alleged co-conspirator, through the testimony of a cooperating witness, when the cooperating witness has murdered the declarant, thus making it impossible for the defense to elicit contradicting evidence.  The defense is entitled to a fair opportunity to challenge and refute the Government's evidence, but it cannot do so with respect to statements allegedly made by Metro, because the Government's cooperating witness had him murdered.  Leonel Rivera must be precluded from testifying to any out-of-court statements by Metro, and the Government must be precluded from inquiring about those statements.

### (c) Statements by CC-5, CC-7, and CC-11 are not admissible as statements against interest pursuant to Rule 804(b)(3)

The Government maintains Statements 2, 3, 4, and 6 are also admissible as statements against interest pursuant to Rule 804(b)(3).  They are not, because these statements

were not against the declarants' penal interest when made, and because they lack strong indicia of reliability.

"Federal Rule of Evidence 804(b)(3) permits the admission of a statement against an unavailable declarant's penal interest if the statement, when made, had so great a tendency to expose the declarant to criminal liability that a reasonable person in his position would have made the statement only if he believed it to be true, and corroborating evidence clearly indicates the trustworthiness of the statement." *United States v. Dupree*, 870 F.3d 62, 80 (2d Cir. 2017) (citations omitted).

To determine whether an unavailable witness's statement is admissible under Rule 804(b)(3), the court first "conducts an adequately particularized analysis, to determine whether a reasonable person in the declarant's shoes would have perceived the statement as detrimental to his or her own penal interest in light of all the surrounding circumstances." *Id.* (citations, quotation marks, and internal ellipses omitted). The statement "need not have been sufficient, standing alone, to convict the declarant of any crime, so long as it would have been probative in a criminal case against him." *Id.* (citations and quotation marks omitted). The question whether a statement implicates the declarant's penal interest is not backward-looking; rather, the question is whether the statement, when made, "sufficiently 'tended' to subject the declarant to criminal liability … that a reasonable man in his position would not have made the statement unless he believed it to be true." *United States v. Katsougrakis*, 715 F.2d 769, 778 (2d Cir. 1983) (citations omitted).

Second, the court looks for "corroborating circumstances indicating 'both the declarant's trustworthiness and the truth of the statement.'" *United States v. Gupta*, 747 F.3d 111, 128 (2d Cir. 2014) (quoting *United States v. Lumpkin*, 192 F.3d 280, 287 (2d Cir. 1999)).

"[T]he inference of trustworthiness from the proffered 'corroborating circumstances' must be strong, not merely allowable."  *United States v. Salvador*, 820 F.2d 558, 561 (2d Cir.), *cert. denied*, 484 U.S. 966 (1987)

None of the statements allegedly made to Leonel Rivera that the Government seeks to admit under Rule 804(b)(3) is admissible as a statement against penal interest, because the statements had no tendency to imperil the declarants' penal interests under the circumstances in which they were made.  According to the Government, the defendant, the declarants, Leonel Rivera and the *Cachiros* drug organization that he ran so corrupted the government of Honduras that they were essentially beyond the reach of the law.  They had no expectation of being prosecuted by the authorities in that country, because they controlled those authorities.  Nor did they have any expectation that they might be extradited to face justice elsewhere, again because they effectively controlled the Honduran government.  Under the circumstances, these declarants were free to brag with one another and with Leonel Rivera about their criminal exploits—whether truthful, exaggerated, or made up of whole cloth—without fear of repercussion.  In the absence of any reasonable fear of consequences, these statements cannot be considered reliable, and are not admissible as statements against interest.

Each of the statements allegedly made to Leonel Rivera is also inadmissible because the Government has failed to set forth corroborating circumstances giving rise to a "strong" inference of reliability, as is required for admission under Rule 804(b)(3).  Each of the declarants was a career criminal who regularly committed crimes of moral turpitude—and the witness through whom the Government seeks to admit these statements is a major international drug trafficker and the murderer of at least 78 people.  Despite these significant reasons to question the truthfulness and reliability of both the declarants themselves and the witness

through whom the Government seeks to admit their hearsay statements, the Government has failed to describe with particularity any corroborating facts or circumstances in support of their application *in limine* for leave to introduce these statements, instead asserting generally that the statements are likely reliable because they were made in private, to an individual (Leonel Rivera) with whom the declarants had long-standing criminal relationships.  But the familiar aphorism holds true: there is no honor among thieves.  Criminals lie to one other, even when they also cooperate with one another.  Because they operate in a world in which reputation is particularly important, they are highly motivated to mislead rivals and co-conspirators alike, in an effort to inflate their perceived power and influence.  Additionally, because Leonel Rivera was such a powerful and dangerous criminal, without whose approval they could not operate, these declarants are particularly likely to have inflated their own culpability in an effort to impress him.  *Cf. United States v. Gupta*, 747 F.3d 111, 129 (2d Cir. 2014) (noting that chief executive of company arguably lacked motivation falsely to inculpate himself in order to impress his subordinates).  In the absence of any other corroborating evidence, the Government's assertion that conversations between these declarants and Leonel Rivera were akin to "speaking with a friend" in a "private setting" is insufficient to support a strong inference that the hearsay statements are reliable.  Statements 2, 3, 4, and 6 must be excluded as impermissible hearsay.

Statement 2 is also inadmissible under Rule 804(b)(3) because it is not against the declarant's interest—it is merely an accusation against Fuentes Ramirez, having no significant tendency to inculpate the declarant, CC-7.  Specifically, the Government claims that in about 2011 or 2012, CC-7 told Leonel Rivera that Fuentes Ramirez received a plane containing hundreds of kilograms of cocaine from CC-6 in *Cachiros*-controlled territory.  The Government argues the statement was against the declarant's penal interest because it "implicated [CC-7 and

Leonel Rivera], the defendant, and others in drug-trafficking activities."  On its face, however,

the statement does not implicate the speaker, CC-7—it only implicates Fuentes Ramirez.

Statement 2 is therefore not admissible under Rule 804(b)(3).

Statement 2 is additionally inadmissible under Rule 804(b)(3) because there is no

indication that CC-7 had personal knowledge of the events described in the statement.

"Although [Rule 804(b)(3)] does not expressly incorporate a requirement that the declarant have

personal knowledge of the facts to which his statement relates, Fed. R. Evid. 602 states that '(a)

witness may not testify to a matter unless evidence is introduced sufficient to support a finding

that he has personal knowledge of the matter,'" and "[i]n a hearsay situation, the declarant is, of

course, a witness" whose testimony must be on the basis of firsthand knowledge.  *United States

v. Lang*, 589 F.2d 92, 97–98 (2d Cir. 1978) (citations omitted).  The Government has not

explained how CC-7 came to believe that Fuentes Ramirez received a planeload of drugs from

CC-6.  His hearsay statement that such an event occurred must therefore be excluded.

Statement 3 is not admissible as a statement against interest under Rule 804(b)(3)

because CC-5 is not unavailable.  The Government contends that CC-5 is not available "because

he is in custody and would likely invoke the Fifth Amendment in response to questioning."

(Govt Mem at 29).  However, CC-5 has already entered a plea of guilty to the charges against

him, and it is therefore far from certain that he would invoke the Fifth Amendment if subpoenaed

to testify.  Moreover, in light of the fact that CC-5 has already pleaded guilty and is currently

awaiting sentencing, there is nothing to prevent the Government from immunizing him from any

further prosecution based on facts known to the Government—including any potential

prosecution based on facts related to Statement 3—and thereafter compelling his testimony.

CC-5 is currently incarcerated at the Metropolitan Detention Center ("MDC") in Brooklyn, well

within the Government's subpoena power.  He is not "unavailable" within the meaning of Rule

804(b)(3), and his statement is not admissible under that Rule.

### III. THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING STATEMENTS MADE BY A HONDURAN POLITICIAN AND A HONDURAN JUDGE THROUGH THE TESTIMONY OF WITNESS-1

The Government seeks to admit three out-of-court statements allegedly made by a

Honduran politician and a Honduran judge through the testimony of Witness-1, whose

anonymous testimony the Government seeks permission to introduce.  Two of the three

statements, identified as Statements 1 and 3, implicate official corruption in Honduras, and

should be excluded under Federal Rules of Evidence 403 and 404, for the reasons discussed

herein in connection with the Politically Corrupt Offenses.[6]  The last of these statements,

identified as Statement 2, does not on its face relate to Fuentes Ramirez or to the offenses alleged

in the Indictment; instead, it appears to relate to public corruption in Honduras generally, rather

than to any narcotics activity implicating the defendant.  It should therefore be excluded unless

the Government establishes that it was made in the presence of Fuentes Ramirez or in

furtherance of the charged conspiracy—facts not supported by the Government's memorandum.

### IV. THE PHOTOGRAPHS OF FIREARMS SHOULD BE EXCLUDED

The Government seeks to introduce numerous photographs of handguns and rifles

contained on a cellphone seized from Fuentes Ramirez.  The defense anticipates that the record

at trial will reveal that Fuentes Ramirez has several gun licenses and legally possessed handguns

and automatic weapons in Honduras.  Moreover, the photographs which the Government seeks

to introduce depict handguns and machineguns, but do not show the defendant to be in

---

[6] For convenience, this section refers to the statements the Government seeks to admit through Witness-1 using the numbers the Government uses as Pages 20 through 26 of its Memorandum.

possession of those weapons, and there is no other evidence that the weapons in the photographs belonged to, or were possessed or used by, the defendant.  Thus, the photographs do not establish that the defendant was in possession of the weapons depicted and even if he did possess the weapons, he had a legal right to do so.  Admitting photographs of weapons to suggest that Fuentes Ramirez illegally possessed the guns depicted, would therefore be misleading and accordingly they should be excluded under Fed. R. Evid. 403.

## V.  EVIDENCE OF FUENTES RAMIREZ'S ELECTRONIC COMMUNICATIONS IS INADMISSIBLE

The Government has not identified "Commissioner Martines" or the alleged military official named "Comanche."  Absent the Government establishing that the individuals were involved in criminal activity with Fuentes Ramirez, the chats are irrelevant and inadmissible and it would be premature to allow the conversations into evidence.  The chats contain multiple levels of hearsay and the applicable foundations have not yet been established.

## VI. THE PURPORTED JAILHOUSE STATEMENTS BY FUENTES RAMIREZ TO LEONEL RIVERA MUST BE EXCLUDED UNDER *MASSIAH* BECAUSE THEY WERE PROCURED IN VIOLATION OF THE SIXTH AMENDMENT

The Government seeks to admit into evidence several statements Fuentes Ramirez allegedly made to Leonel Rivera while in custody, in response to questioning on two separate occasions.  Leonel Rivera, a government agent, knew or should have known that Fuentes Ramirez was represented by counsel, but he nevertheless questioned Fuentes Ramirez, and elicited statements from him, outside the presence of his counsel.  Leonel Rivera's conduct violated Fuentes Ramirez's Sixth Amendment rights, and the resulting statements must therefore be excluded.

In *Massiah v. United States,* the Supreme Court held that it is a violation of the Sixth Amendment right to counsel for a private individual, acting as a government agent, to "deliberately elicit[ ]" incriminating statements from the accused. 377 U.S. 201, 206 (1964). Once the right to counsel attaches, the Sixth Amendment renders inadmissible statements elicited by the government outside the presence of a defendant's counsel that are not accompanied by a waiver. *U.S. v. Yousef*, 327 F.3d 56 (2d Cir. 2003). The *Massiah* right is infringed at the time of the interrogation and it is that deprivation that demands the remedy of exclusion from the prosecution's case in chief. *Kansas v. Ventris*, 556 U.S. 586 (2009).

On March 1, 2020, Fuentes Ramirez was arrested in Miami while visiting members of his family in Florida. On April 23, 2020, Fuentes Ramirez was transferred to the Metropolitan Correctional Center ("MCC") in New York.

Although the Government already knew that Leonel Rivera was going to testify against Fuentes Ramirez, it did not place him in the prison traditionally used to house cooperators, the Queens Detention Facility. Rather, Leonel Rivera was placed right alongside Fuentes Ramirez in the MCC. As the Court is aware, the MCC has been on virtual lockdown since March 2020, with no free inmate movement. Notwithstanding the lockdown, Leonel Rivera somehow managed to make at least two visits to Fuentes Ramirez's housing area and supposedly gathered incriminating statements from Fuentes Ramirez (which the Government now seeks to offer at trial). (Govt Mem at 15). The Government's representation that "the defendant approached and talked to Leonel Rivera on two occasions" is misleading. *Id*. If Leonel Rivera's version of events is believed, the conversations ensued when, notwithstanding the MCC lockdown, Leonel Rivera visited the housing area where Fuentes Ramirez was incarcerated to shower and the pair proceeded to engage in a conversation. (3501-127).

28

According to Fuentes Ramirez, Leonel Rivera came to his cell on three separate occasions and engaged him in conversation about his case. Fuentes Ramirez explicitly denies that he ever approached Leonel Rivera or that he ever initiated a conversation with him at the MCC. (See affidavit of Geovanny Fuentes Ramirez, attached as Exhibit 2 to the affidavit of Avraham C. Moskowitz).

It is worth noting that this is not the first time Leonel Rivera has engaged in post-indictment discussions/interrogations with individuals against whom he was cooperating, in violation of the *Massiah* rule.  Nor is it the first time authorities at the MCC have ignored separation orders and permitted Leonel Rivera to approach and interrogate individuals against whom he was actively cooperating.  Specifically, on August 1, 2018, in the matter of *United States v. Montoya*, No. 15 Cr. 378 (S.D.N.Y.) (Gardephe, J.), Leonel Rivera was placed in the same housing area as Fredy Renan Najera Montoya, a man Leonel Rivera previously tried to kill twice and against whom he was scheduled to testify.  While housed with Najera Montoya, Lionel Rivera repeatedly questioned and threatened him, outside the presence of counsel, in an apparent effort to elicit inculpatory statements and omissions that would bolster Leonel Rivera's own anticipated testimony—and that Leonel Rivera could use to his own advantage in the course of his ongoing cooperation with the Government.  (*United States v. Najera Montoya*, No. 15 Cr. 378, ECF Doc. No. 155, Fredy Najera Montoya's Objections to Presentence Investigation Report, at 9).[7]  This improper contact was supposedly addressed by prosecutors with Leonel Rivera after it occurred in subsequent debriefings.  (*Id.*, at 10.)  Leonel Rivera was on notice he should not have been engaging and questioning individuals represented by Counsel. (*Id.*) Because Leonel Rivera, a Government agent, knowingly elicited incriminating statements from

---

[7] A true and accurate copy of Fredy Najera Montoya's Objections to Presentence Investigation Report is annexed to the accompanying Affirmation of Avraham C. Moskowitz as Exhibit 3 for the Court's convenience.

Fuentes Ramirez in violation of Fuentes Ramirez's right to counsel, all aspects of the alleged conversations should be precluded by the Court.

## VII.  STATEMENTS BY "PLUTO" ARE INADMISSIBLE

In the "BACKGROUND" section of its memorandum, the Government refers to multiple statements allegedly made by CC-7 ("Pluto") to Leonel Rivera.  Although the Government's motion *in limine* does not expressly discuss the admissibility of those statements, the defendant anticipates that the Government may attempt to introduce them at trial.

The Government has failed to establish that CC-7 was a member of the conspiracy in which Fuentes Ramirez is accused of participating, that Fuentes Ramirez adopted any of his statements, or any other factual or legal predicate for the admission of any of the statements by CC-7 that are described in the Government's "BACKGROUND" summary. Accordingly, the Government, as the proponent of that evidence, should be precluded from introducing any of the CC-7 statements described in its motion papers.

## **CONCLUSION**

For all of the reasons and based upon all of the authorities cited herein, the

Government's motions *in limine* should be denied, the Defendant's motion *in limine* should be

granted, and the Government's evidence should be excluded.

Dated: January 27, 2021
New York, New York

Respectfully submitted,

Avraham C. Moskowitz

Christopher R. Neff

Eylan Schulman

TO:   Clerk of the Court (via electronic filing)
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007


United States Attorney's Office (via electronic filing)
Southern District of New York
1 Saint Andrew's Plaza
New York, New York 10007