L2C2RamC kjc

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,              New York, N.Y.

4           v.                           15 Cr. 379 (PKC)

5  GEOVANNY FUENTES RAMIREZ,

6              Defendant.

7  ------------------------------x        Remote Conference

8                                         February 12, 2021
                                          12:00 p.m.
9

10 Before:

11                 HON. P. KEVIN CASTEL,

12                                         District Judge

13

14                    APPEARANCES

15 AUDREY STRAUSS
        Acting United States Attorney for
16      the Southern District of New York
   BY:  MATTHEW J. LAROCHE
17      JACOB H. GUTWILLIG
        MICHAEL D. LOCKARD
18      Assistant United States Attorneys

19 MOSKOWITZ & BOOK, LLP
        Attorneys for Defendant
20 BY:  AVRAHAM C. MOSKOWITZ

21 SCHULMAN TRIAL, PLLC
        Attorneys for Defendant
22 BY:  EYLAN SCHULMAN

23 Also Present:

24 Rossana Testino Burke,
   Mirta Hess Loedel,
25      Spanish Interpreters

L2C2RamC kjc

1          THE COURT:  This is 15 Cr. 379, United States of

2     America v. Geovanny Fuentes Ramirez.

3          The appearance for the government, please.

4          MR. LAROCHE:  Good afternoon, your Honor.  This is

5     Matt Laroche for the government, and also participating on this

6     call for the government are Jacob Gutwillig and Michael

7     Lockard.

8          THE COURT:  All right.  Good afternoon to all three of

9     you.

10          And appearing for the defendant?

11          MR. MOSKOWITZ:  Good afternoon, your Honor.  This is

12     Avi Moskowitz on behalf of Mr. Fuentes Ramirez, and on the

13     phone with me is co-counsel, Eylan Schulman, who is a part of

14     the CJA Mentoring Program.

15          THE COURT:  All right.  Good afternoon to both of you.

16          And good afternoon to Mr. Fuentes Ramirez.  Can you

17     hear me, sir?

18          THE DEFENDANT:  Good afternoon, your Honor.  I hear

19     you perfectly.

20          THE COURT:  Thank you.

21          We have a court certified interpreter today,

22     Ms. Rossana Testino Burke, is that correct?

23          THE INTERPRETER:  Yes, your Honor.

24          THE COURT:  Thank you.

25          Mr. Fuentes Ramirez, you have the right to participate

L2C2RamC kjc

1    in a conference, generally speaking, in a courtroom, with the

2    judge on the bench, with the prosecutor present, the

3    interpreter and, most importantly, defense counsel at your

4    side.  I understand that you are prepared to waive that right

5    and to proceed with this proceeding today telephonically.  Is

6    that correct, sir?

7              THE DEFENDANT:  That's correct, your Honor.

8              THE COURT:  All right.  If at any point during this

9    proceeding you wish to speak in private with your lawyer or

10   either of your lawyers, please let me know, and I will give you

11   the opportunity to do so.  Do you understand that?

12             THE DEFENDANT:  Yes, your Honor.  Thank you.

13             THE COURT:  Before we get into the substance of

14   things, I want to state on the record that I direct the

15   prosecution to comply with its obligation under *Brady v.*

16   *Maryland* and its progeny to disclose to the defense all

17   information, whether admissible or not, that is favorable to

18   the defendant, material either to guilt or punishment, and

19   known to the prosecution.

20             Possible consequences for noncompliance may include

21   dismissal of individual charges or the entire case.  Exclusion

22   of evidence and professional discipline are court sanctions on

23   the attorneys responsible.

24             I will be entering a written order more fully

25   describing the obligation and the possible consequences of

1  failing to meet it, and I direct the prosecution to review and

2  comply with that order.

3        Does the prosecution confirm that it understands its

4  obligation and will comply.

5        MR. LAROCHE:  Yes, your Honor.  We do confirm.

6        THE COURT:  Thank you.

7        Let me turn first to the government's sealed requests

8  one and two.  Am I correct, Mr. Moskowitz, that there is no

9  objection to either of them, is that correct?

10       MR. MOSKOWITZ:  Your Honor, I'm not sure -- if we are

11 talking about sealing --

12       THE COURT:  Let me put it this way.  This is -- the

13 first request relates to Witness 1 testifying under a pseudonym

14 and request number two is that the names of jurors, alternate,

15 and members of the venire not be disclosed on the public

16 record, although they will be provided to defense counsel, as

17 would the identity and the correct name of Witness 1.

18       MR. MOSKOWITZ:  That's correct, your Honor.  We have

19 no objection to either of those requests.

20       THE COURT:  All right.  And I find that both are

21 warranted because, in the case of the first, a risk of

22 potential retaliation, due to the nature of the charges, a

23 previous incident that took place within two weeks of the

24 conclusion of the Hernandez Alvarado trial, which is referred

25 to in the briefing, at least the government's briefing, and the

1   limited ability of the Honduran government to protect the

2   witness's family.

3           Also with regard to jurors, there is reasonable

4   grounds to believe that jurors would be in fear from disclosure

5   and that fear, for reasons stated above, would have a basis in

6   fact.

7           So I am granting both of those applications.

8           So now let me turn to the government's motion *in*

9   *limine* with regard to what I will call narcotics-related

10  corruption, and this is inclusive of bribery of government

11  officials, police officials.  Is there anything that you wanted

12  to say from the defense standpoint in addition to what is in

13  your brief?

14          Let me say, before we get too deeply into all of this,

15  that as a judge I certainly can draw lines as to relevance of

16  particular lines of inquiry or lack of relevance of a line of

17  inquiry.  That is somewhat easier to do than knowing whether or

18  not the requirements for the admission of a statement by a

19  coconspirator during and in furtherance of a conspiracy have

20  been met.  That sometimes requires evidence or taking it

21  subject to connection in the evidence before the Court can make

22  a final determination.

23          I have the benefit of having presided over the

24  Hernandez Alvarado trial, but that was a different defendant

25  facing somewhat different charges, represented by different

L2C2RamC kjc

1    counsel, so I recognize that.

2          But is there anything you wanted to add from your

3    briefing, Mr. Moskowitz?

4          MR. MOSKOWITZ:  Judge, I understand, reading between

5    the lines, what your Honor is saying, and I can certainly

6    conceive of how such evidence could be relevant.  The point

7    that I tried to stress in my brief, both with respect to this

8    and with respect to the alleged homicide, is that, unlike the

9    situation in the Hernandez case, where there was videotaped

10   evidence, as I understand it, and corroborating evidence, in

11   this case we have the testimony of one, maybe a second witness,

12   and a lot of hearsay or a lot of third-party statements to the

13   cooperating witness.

14         We have had no opportunity to investigate this, to

15   take testimony from potential witnesses in Honduras, and that

16   is -- that makes a big difference to us here.  There have

17   clearly been public statements from the government of Honduras

18   saying that this was all false, and theoretically that would

19   mean that, if we got letters rogatory, we could obtain

20   testimony to that effect, even if the witnesses didn't come

21   here.  So that is, from my perspective, in order to defend

22   Mr. Fuentes Ramirez against those charges, what would be

23   necessary.

24         And the other point is, it is really a sideshow to the

25   underlying charges.  Either Mr. Fuentes Ramirez can be found --

L2C2RamC kjc

1  you know, the jury will believe that he imported hundreds of

2  thousands of kilos of cocaine into the United States or not.

3  And whether or not there is political corruption in Honduras or

4  whether or not Mr. Fuentes Ramirez made political campaign

5  contributions to certain political figures in Honduras really

6  is a sideshow to whether or not he imported the cocaine into

7  the United States.

8         I think that delaying this trial so that we can do

9  what defense lawyers have to do, which is investigate the

10  allegations, for what essentially becomes a sideshow, should

11  not be permitted, and therefore the evidence should be kept

12  out.

13         THE COURT:  All right.  Thank you.

14         Does the government wish to add anything to its

15  written submissions in this regard?

16         MR. LAROCHE:  Not to its written submissions, your

17  Honor.

18         THE COURT:  All right.  So the government has

19  identified some examples of what it views as bribery in the

20  course of and corruption in the course of and in furtherance of

21  the charged conspiracy.  So it claims to have evidence that, in

22  2009, defendant bribed members of the Honduran National Police,

23  including CC-3, who was a Honduran National Police Chief, in

24  exchange for information and to protect the defendant's drug

25  laboratory; and also evidence that, after the drug laboratory

L2C2RamC kjc

1    was raided, in about 2010, the defendant bribed CC-10, who was

2    a high-ranking judge in Honduras, to avoid investigation or

3    arrest; and in 2013, defendant contributed money to CC-4 for

4    his campaign for the Honduran presidency for protection,

5    assistance transporting cocaine, and to work with CC-4's

6    brother.

7          I understand the defendant's arguments, but these are

8    acts which were conducted, allegedly -- and of course it

9    ultimately becomes a jury question, but on the evidentiary

10    point, the government proffers that it was during and in

11    furtherance of the conspiracy. It looks to me that it is not

12    likely that it is necessary for me to rule on 404(b) as a

13    backup, although the government argues that even if it wasn't

14    in furtherance and during the conspiracy, it would be evidence

15    negating intent and showing a common methodology. But it seems

16    to me so far that it is evidence in furtherance and during the

17    charged conspiracy. If any of it is temporally outside of the

18    conspiracy period, and I'm not sure any of it is, it certainly

19    would be background to the conspiracy to show why members of

20    the conspiracy had confidence that these officials would be

21    receptive to bribe-taking. So presumptively that evidence is

22    admissible.

23          Now, there are coconspirator statements, turning to a

24    different subject, that I guess I will call it the government's

25    second motion *in limine*, and these are coconspirator statements

to Witness 1. There are three of them. I take it that what the government is proffering is that Witness 1 was present when a coconspirator made the statement or at least statement one and three to the defendant? Is that what the government is proffering?

MR. LAROCHE: Yes, your Honor.

THE COURT: Okay. So they would be, at least as to one and three, statements during and in furtherance of the conspiracy by one coconspirator to another coconspirator, and specifically the defendant, so they would come in under 801(d)(2)(E), it seems to me, or at worst as adoptive admissions by the defendant and thus under 801(d)(2)(B) or 804(b)(3).

I want to hear what the government's position is with regard to statement number two, which is not limited or not focused on drug trafficking, and what is it that Witness 1 is going to say about CC-4 soliciting large contributions from what I will call Owner 1, who is not a coconspirator. Is this something for which defendant was present or is this something that Witness 1 heard about? I don't quite understand the context of the statement, so if the government could please explain.

MR. LAROCHE: Yes, your Honor.

Witness 1 would testify that he was present for this statement involving CC-4 and Owner 1.

1          THE COURT:  So he was present –– he was in the

2   presence of CC-4 and Owner 1 when the statements were made.

3          MR. LAROCHE:  That's correct, your Honor.

4          THE COURT:  And this is proffered as what?  Background

5   to the conspiracy?  It doesn't seem to be evidence of the

6   conspiracy or an act in furtherance of the conspiracy.  At most

7   it might be background to show the receptiveness of CC-4 to

8   campaign contributions for a corrupt purpose.

9          Please explain.

10         MR. LAROCHE:  Yes, your Honor.

11         First, we have argued and do believe that it would be

12  in furtherance of the conspiracy and that CC-4's statements in

13  particular are in furtherance because they spurred assistance

14  from Owner 1 and created a relationship necessary for CC-4 to

15  conduct drug trafficking negotiations with the defendant as

16  Business 1.  So we do make the argument and do believe that in

17  that way it does further the conspiracy.

18         We also do believe, as your Honor referenced, that it

19  is important background for the context in which later meetings

20  happened involving CC-4 and the defendant at Business 1, in

21  that it shows how and why CC-4 would have meetings regarding

22  drug trafficking at Business 1, because it's a location that

23  CC-4 felt comfortable discussing criminal activities and

24  soliciting large bribes in exchange for promises.  With respect

25  to the defendant, it is promises with respect to drug

L2C2RamC kjc

1    trafficking and things that each of them would do for each

2    other to further the conspiracy.

3           So we do believe that it would be both in furtherance,

4    but, also, as an alternative, important background and context

5    as to the existence of the conspiracy that's alleged in the

6    indictment.  And in our reply brief we cite some cases with

7    respect to that argument.

8           THE COURT:  All right.  Now, Business 1 was allegedly

9    used by the defendant to launder drug trafficking proceeds,

10   from what I have read from your submissions.  Was that the case

11   at or about the time of CC-4's solicitation of the campaign

12   contributions in 2013?

13          MR. LAROCHE:  Yes, your Honor.

14          THE COURT:  Okay.  Mr. Moskowitz, I will give you an

15   opportunity, if there is anything you want to say about the

16   statements by the witness, statements one, two, and three.

17          MR. MOSKOWITZ:  Your Honor, I don't have much more to

18   add with respect to the statements other than to again say that

19   if the Court is going to allow these statements in, we need to

20   be able to take the testimony of the alleged recipient or at

21   least attempt to take the testimony of the alleged recipient,

22   so -- who has denied being corrupt and doing anything to

23   protect drug dealers or taking any money to protect drug

24   dealers.  He has made very public statements about that, and if

25   the Court is going to allow that in, we should be allowed to

L2C2RamC kjc

1    take testimony.

2            THE COURT:  Thank you, Mr. Moskowitz.

3            For the reasons that I have already laid out,

4    statements one and three appear to come in as statements during

5    and in furtherance of the conspiracy, and statement number two

6    I need not go any further than to conclude that it's a

7    background to the conspiracy, although it may also be in

8    furtherance of the conspiracy.

9            I'm just going to put one thing to rest regarding the

10   idea -- and I have great respect for defense counsel, who has

11   appeared before me for the last maybe going on 15 years, and I

12   think is one of the finest members of our CJA panel -- but, as

13   everyone knows, that's not how this works.  The evidence is

14   disclosed, and then you move to exclude it, and only if you

15   move to exclude it does that mean that evidence counts.  That's

16   not the way this works.

17           There are procedures for obtaining disclosure under

18   Rule 16, under Rule 17, and the fact that the government plans

19   to offer evidence puts a defendant on notice of that evidence

20   and the need to investigate.  If the Court said, I will rule on

21   the motion *in limine* until trial, which is a perfectly

22   appropriate thing for a Court to do, that would not entitle a

23   defendant on the day of trial to say, well, now that you have

24   said you are going to let it in, or in the middle of trial, now

25   I want to investigate.

L2C2RamC kjc

1           MR. MOSKOWITZ:  Your Honor, if I may?

2           THE COURT:  So, that argument, with all due respect,

3    does not carry the day.

4           MR. MOSKOWITZ:  Your Honor, if I may just briefly be

5    heard --

6           THE COURT:  Oh, you want to argue the point or are we

7    going to move on to the third motion *in limine*?

8           MR. MOSKOWITZ:  I just want to make one point on that

9    issue, Judge, which is, until the government files its motion

10   *in limine*, I, the defense, did not have notice that this was

11   going to be part of the trial.  The fact that there were

12   allegations out there were known, but the government never said

13   and wasn't required to say this is what we are seeking to

14   prove, and it's perfectly reasonable for defense counsel to

15   say, you know, if you are not going to offer it, I don't have

16   to seek letters rogatory and go to Honduras, that is, I don't

17   have to deal with an issue until it has become an issue.  Once

18   it became an issue, we raised it in our response to the motion

19   *in limine*.

20          THE COURT:  Right.  All right.  Well, I have stated

21   what I have stated.  I will give the government a brief

22   opportunity to respond.

23          MR. LAROCHE:  Thank you, your Honor.

24          We just would reiterate what we put in our motion,

25   which is that corruption and also violence we have identified

1  from very early in the case as being part of -- at least in the

2  complaint as what we saw as being relevant to the charges and

3  we laid that out.  I think we have tried at every step to make

4  disclosures in terms of early 3500 production, which certainly

5  at least identified the information.

6  I don't disagree with Mr. Moskowitz that we didn't

7  send him a letter saying this is our trial evidence.  That

8  said, we have, at every step, attempted to identify what the

9  evidence would be.

10  So other than that, your Honor, we stick with what we

11  put in response in our reply submission.

12  THE COURT:  All right.  Thank you.

13  Let me turn to coconspirator statements made to Leonel

14  Rivera, and these are some six statements which are outlined in

15  the government's submission.

16  Is there anything you want to add to your papers,

17  Mr. Moskowitz?

18  MR. MOSKOWITZ:  Your Honor, I think we have laid out

19  the arguments in our papers.  I would highlight the arguments

20  with respect to the witness known as Metro, whose alleged

21  statements to Mr. Rivera form a large part of the government's

22  case.  It is really ironic -- it is ironic and, in many

23  respects, outrageous and unfair that Mr. Rivera gets to testify

24  about allegedly incriminating statements made to him by a

25  witness who he has made unavailable because he murdered him.

L2C2RamC kjc

1          THE COURT:  Thank you.

2          Is there anything the government wants to respond to

3    or elaborate from its submissions?

4          MR. LAROCHE:  Just briefly, your Honor.

5          We disagree with the characterization that

6    coconspirator statements from CC-1 comprise a substantial

7    portion of our case.  We have identified two, and we have

8    identified substantial additional evidence that comes through

9    not just Leonel Rivera, but other witnesses and other

10   corroborating evidence.

11         Otherwise, your Honor, we rest on our arguments in our

12   briefs.

13         THE COURT:  First of all, with regard to Metro, CC-1,

14   I understand the defendant's position that it is rather choice

15   that, you know, he is not available because of the acts of the

16   witness who wants to testify.  But there is no evidence that I

17   am aware of that the murder of Metro had anything in any way,

18   shape, or form to do with eliminating him as a testifying

19   witness in a trial.  That is not the proffered reason, and

20   there is nothing for me to base any finding at this point on

21   that.  So certainly a -- procuring a witness's unavailability

22   may be a reason to find something not admissible on the basis

23   of the witness's lack of availability, but that's not what we

24   are dealing with based on the proffers that I have.

25         If the testimony turns out to be different at trial,

L2C2RamC kjc

1  that will be a different situation.  But it seems to me that

2  they are going to be admissible as coconspirator statements,

3  and so I don't see a basis to exclude them at this stage.

4          With regard to what I will call the fourth motion *in*

5  *limine* relating to the five alleged drug murders in furtherance

6  of the conspiracy, I gather from the defendant's submission

7  that there is -- that one of the cooperators, if I read your

8  papers correctly, had participated himself or is going to admit

9  having participated in a rather large number of murders, is

10  that right, Mr. Moskowitz?

11          MR. MOSKOWITZ:  Yes.  It's my understanding, your

12  Honor, based on what the government has provided to us, that

13  Leonel Rivera has admitted to participating in 78 murders and

14  his brother, Javier, if he testifies, in 48 murders.

15          THE COURT:  Okay.  Is there anything you wanted to

16  expand on with regard to the five murders that the government

17  plans to or proposes to offer evidence of defendant's

18  participation?

19          MR. MOSKOWITZ:  Again, your Honor, here, even more

20  extreme than the situation with the political corruption, what

21  makes this situation unusual is that the government has not

22  provided a single piece of paper other than the 3500 material

23  from the cooperating witnesses with respect to these murders.

24  There is not a single coroner's report.  There are no police

25  reports.  Other than the statements of Leonel Rivera, we don't

L2C2RamC kjc

1    know that these murders took place.  And I'm now being required

2    to defend essentially five murder cases with not a piece of

3    evidence other than the statements of Leonel Rivera.  That is

4    unfair and, again, if the Court is going to allow this evidence

5    in, we should be able to investigate what happened and whether

6    the murders happened and what evidence there is in Honduras as

7    to who committed these murders, because clearly the defendant

8    wasn't charged with them in Honduras.

9              THE COURT:  Thank you.

10             Anything further from the government?

11             MR. LAROCHE:  No, your Honor, other than just to

12   reiterate what we said in our brief, which is, we disagree that

13   they are not corroborated, or that there is not additional

14   information beyond Leonel Rivera, and we have explained that in

15   the different ways that the fact of these murders, and the

16   defendant's participation is corroborated beyond just Leonel

17   Rivera.

18             THE COURT:  All right.  Thank you.

19             I take the point that there are not documents and

20   records and autopsy reports and police reports.  The relevant

21   point here is whether the government has such information and

22   has failed to disclose it or whether the government doesn't

23   have such documentary evidence.  And implicit in the

24   government's position is that it has turned over what it has.

25   Is that correct from the government's standpoint?

L2C2RamC kjc

1           MR. LAROCHE:  Yes, your Honor.

2           THE COURT:  And, so, the extent to which the murders

3      are dependent on the credibility of cooperating witnesses, this

4      presents an opportunity for the defendant.  The thrust of the

5      government's case, as revealed in their briefing to this Court,

6      is that it was an environment in which law enforcement could

7      not be relied upon to investigate crimes that were performed by

8      the conspiracy in furtherance of its activities, for reasons

9      that their evidence will show, and so the record is what it is.

10          Again, I repeat what I said.  There has been nothing

11     that has stopped the defense from making -- from having made an

12     application back on January 8 or so if it wanted something.

13     Certainly defense has made applications to the Court and the

14     Court has endeavored to timely rule on them.  There was one

15     that necessitated some travel.  I don't need to get into it

16     because it was an *ex parte* application.  The day that

17     application came in, the Court granted it.

18          I simply don't accept that there is some clock that

19     begins to run on the day a Court rules on an *in limine* motion.

20     So it seems to me that it will be the government's burden to

21     tie the defendant to these murders, to persuade the jury that

22     the testimony of the witnesses is credible, and of course to

23     establish that they were during and in furtherance of the

24     conspiracy.  So certainly I am not excluding that evidence at

25     this stage.

L2C2RamC kjc

1      Now, with regard to the government's fifth motion *in*

2  *limine*, there is a photograph of an official Honduran law

3  enforcement member -- document, rather, showing an

4  investigation into crimes relating to money laundering, and I

5  take it that this is from -- this is from the defendant's cell

6  phone, and I take it that the defendant is not objecting to

7  that specific item of evidence, is that correct?

8      MR. MOSKOWITZ:  That document, at this time, no, your

9  Honor.

10      THE COURT:  And there are also photographs of firearms

11  and large quantities of U.S. currency.  I take it the defendant

12  doesn't object to the picture of the U.S. currency, is that

13  correct?

14      MR. MOSKOWITZ:  If there is a picture of the defendant

15  with currency, there is no basis for an objection.  Any other

16  pictures which are -- where the source is not available, we

17  would object because there are many pictures that are public

18  source pictures, either from the Internet, from the media, and

19  unless the government can tie them to the defendant, meaning it

20  is the defendant's cash or the defendant took the picture of a

21  coconspirator's cash, for example, without the ability to tie

22  it to a source and the fact that there is a picture of cash on

23  the defendant's phone doesn't mean anything or --

24      (Indiscernible crosstalk)

25      MR. MOSKOWITZ:  -- for that matter.

1          THE COURT:  Pardon me?

2          MR. MOSKOWITZ:  Or weapons for that matter.

3          THE COURT:  Right.  And weapons you also make the

4     point that the defendant held certain licenses for firearms.

5          MR. MOSKOWITZ:  That's correct, your Honor.

6          THE COURT:  All right.

7          MR. MOSKOWITZ:  And the handguns, it's my

8     understanding, your Honor, the handguns were certainly legal

9     firearms in Honduras.  The automatic firearms are more

10    problematic in terms of their legality; but, again, unless

11    there is some evidence that those are the defendant's firearms,

12    the fact that he has pictures of firearms on his phone is not

13    relevant.  If they are public source documents off the Internet

14    or from the media, they are really irrelevant and they are

15    prejudicial.

16         THE COURT:  All right.  Thank you.

17         Well, as I ruled in the Hernandez Alvarado trial, the

18    fact that a defendant has a license to carry a firearm is not a

19    defense to a charge of possessing or carrying one in

20    furtherance of a conspiracy.  And whether it goes directly to a

21    firearm charge or not, it certainly is -- and the government is

22    entitled to argue that they are tools of a drug conspiracy,

23    whether licensed or not.  That would be true here in the United

24    States and it is true in Honduras.  The fact that someone has a

25    licensed handgun or that it's lawful to possess some other

1    firearm in some state does not mean that that firearm cannot be

2    a tool of a narcotics trafficking conspiracy.  And the same way

3    with currency, whether they are tools or fruits of the

4    conspiracy.

5          Now, the fact that they are on the defendant's phone

6    goes to weight, the weight of the evidence.  And certainly the

7    defendant is free to argue that a photograph of either is not

8    entitled to great weight.  And of course I will police the

9    photos.  If there are a multitude, if they become redundant or

10    inflammatory in some way, then I will cut them back.  But the

11    concept in the abstract I'm not going to exclude at this point.

12          Now, there are also some, I guess, electronic messages

13    with a Honduran military official described as Comanche, and a

14    law enforcement official identified as a commissioner, I don't

15    know whether it is Martinez, or something along those lines.

16    Is there an objection to those messages?

17          MR. MOSKOWITZ:  Yes, your Honor.  As we laid out in

18    our papers, the government speculates as to who these people

19    are and what their relationship is with the defendant.  They

20    don't know -- they don't have a name for Comanche.  They

21    certainly haven't produced one.  Nor do they have any evidence

22    or have proffered any evidence as to what his role was in the

23    military, when he was in the military, if he is still in the

24    military, if he was in the military at the time of these

25    messages, and what his relationship was with the defendant.

L2C2RamC kjc

1    And the same thing is true with respect to the commissioner.

2    Without their ability to identify in a solid way who these

3    people are, any communications between them and the defendant

4    are irrelevant.

5         THE COURT:  Yes.  Let me hear from the government.

6    Why isn't Mr. Moskowitz right about this?  If the individuals

7    are not -- if there is not evidence that they are members of

8    the conspiracy and that the communication was in furtherance of

9    the conspiracy, I don't know how it gets in and I don't know

10   what the probative value is.

11        So there are communications about Lopez Sanabria, and

12   I know the circumstances, they are in the government's papers,

13   what the circumstances of that murder was, but that was a

14   murder that was covered by the international press.  And the

15   mere fact that one person remarks to another person on that

16   publicly known fact doesn't seem to me to have much by way of

17   probative value.

18        How do these electronic messages come in and why

19   shouldn't I exclude them?

20        MR. LAROCHE:  Yes, your Honor.

21        First, I will just start on the relevance and

22   probativeness of these communications and then move to the

23   basis for their admission.

24        I think when we are looking at the communications with

25   Comanche, the military official, they come in on several bases.

1  One is, it shows the significant connection the defendant has

2  with Honduran military officials such that the defendant

3  confirmed, in one of his text messages, "100 percent Comanche"

4  that the military had supported him.  That is plainly relevant

5  to corroborate other witnesses who say that the defendant was

6  working directly and with the support of the Honduran military

7  in furtherance of his drug trafficking activities.

8  The Comanche messages also show that the defendant had

9  a relationship with certain of his coconspirators, in

10  particular, the Los Valles cartel in which the defendant and

11  Comanche are making significant admissions relating to their

12  knowledge of their drug trafficking activities, even after

13  leaders of the cartel were arrested, and that is relevant

14  because the defendant is alleged and there will be evidence

15  that he worked with the Los Valles cartel during the course of

16  the conspiracy.  So the fact that Comanche and the defendant

17  are talking about that cartel in a way that shows their

18  knowledge of their drug trafficking activities we believe is

19  relevant.

20  So in terms of the Comanche, the admissibility of

21  those communications, we believe the Court need not refer to

22  coconspirator statements because they can be admissible as

23  adoptive admissions because the defendant is participating in

24  those communications.  So the Court need not find that Comanche

25  is in fact a member of the conspiracy in order to admit them.

1      We have made arguments in our reply brief as to why Comanche

2      was in fact a member of the conspiracy.  We focus in particular

3      on communications relating to the Valles, and communications

4      after one of the Valles was murdered which show that the

5      defendant and Comanche were talking in detail about their

6      knowledge of what we believe their drug trafficking activities

7      in this case.  So at least with respect to Comanche we feel

8      there is both substantial relevance and a basis under the

9      rules, because the defendant was himself participating in the

10     communications to admit those on several bases.

11               THE COURT:  All right.

12               MR. LAROCHE:  With respect to --

13               THE COURT:  Go ahead.

14               MR. LAROCHE:  I'm sorry, your Honor.

15               With respect to the commissioner, your Honor, to begin

16     with relevance, again, this shows the defendant's consciousness

17     of guilt, because the commissioner and the defendant are

18     talking about ways to conceal evidence in connection with an

19     investigation in Honduras.  That is admissible under

20     consciousness of guilt to show attempts to hide and conceal

21     evidence.

22               We also believe that these communications with the

23     commissioner will corroborate witness testimony about the

24     defendant's corrupt connections to law enforcement and his

25     ability to use those connections in furtherance of his drug

1  trafficking activities.  And on the admissibility point, again,

2  it's similar to Comanche.  For one, you need not go to

3  coconspirator statements because they are adoptive admissions

4  because the defendant participated in those communications.

5  But even if the Court were to go that next step to determine

6  whether there are coconspirator statements in furtherance of

7  the conspiracy, again, we have cooperators who will testify as

8  to Commissioner Martinez being involved in the conspiracy, and

9  we believe, based on the evidence that is presented, it is

10  sufficient to say, based on this, based on those -- that

11  testimony and based on these communications, that he was a

12  member and that these attempts to hide evidence were in

13  furtherance of that conspiracy.

14          THE COURT:  All right.

15          MR. MOSKOWITZ:  Your Honor, if I could?

16          THE COURT:  Let me ask a question of the government.

17          Do I have the full text of each of these messages?

18          MR. LAROCHE:  No, your Honor, but we can provide those

19  to you.

20          THE COURT:  All right.  Go ahead, Mr. Moskowitz.

21          MR. MOSKOWITZ:  Your Honor, I want to make a point

22  with respect to -- first with respect to Comanche, and that is

23  the murder of one of the Valles was also a matter of public

24  discussion and knowledge in Honduras and, again, is no

25  different than their talking about the other publicly disclosed

L2C2RamC kjc

1   or publicly discussed matter, the murder of the witness or the

2   person related to the Tony Hernandez trial.  They were -- when

3   you look at the text they are talking about, oh, this drug

4   dealer got killed, oh, well, it was either the police or the

5   other bad guys.  That's what happens in the drug business.  And

6   that's essentially the nature of those conversations.  And in

7   that respect, they are completely irrelevant.

8        With respect to Martinez, there is no context for the

9   text or the chat that the government seeks to offer, there is

10  no explanation for why the defendant or no context at all for

11  why the defendant was asking for this particular type of

12  software from this particular individual, who we don't know

13  even who they are, whether they are currently in law

14  enforcement, whether they are not currently in law enforcement,

15  whether -- whether the title was honorary, we don't know

16  anything about them, and neither does the government.

17       MR. LAROCHE:  Your Honor, may I just briefly respond?

18       THE COURT:  Yes, go ahead.

19       MR. LAROCHE:  Sure.  First, with respect to Comanche,

20  I just disagree with the characterization of the communications

21  relating to the murder of the Valles member.  They are talking

22  pretty specifically about these individuals, quote, "having

23  taken advantage of many people who they," quote, "fucked with

24  money from products they are given and then they don't pay up."

25       And then with respect to additional acts of violence,

1    Comanche says that essentially he has specific knowledge of

2    such violent acts, saying, quote, "If not just anyone, they are

3    going to get fucked up.  You will see."  That is a quote from

4    this communication.  This is not two individuals simply

5    discussing public reporting about a murder.  It's two

6    individuals who have knowledge of the Los Valles cartel, and we

7    will provide that full communication to the Court.

8         With respect to the commissioner, we do believe there

9    is context there in that communication, which we will also

10   provide, to show that they are in particular talking about

11   investigations that they are trying to hide information from.

12   There are specific references by the commissioner to being

13   hounded by prosecutors, and that plus the prison e-mails which

14   show that the defendant was trying to reach out to the

15   commissioner to get nonpublic information about this case shows

16   that he was not just some random person.  This is someone he

17   goes to when he needs information that is nonpublic to protect

18   him, which is exactly what our witnesses are going to testify

19   at trial.

20        So we do believe there is a connection there and a

21   relevance that is highly probative to support the arguments we

22   are making that this is more evidence of the defendant trying

23   to hide evidence -- hide evidence, conceal evidence, and having

24   corrupt connections with law enforcement in furtherance of his

25   drug trafficking activities.

L2C2RamC kjc

1    THE COURT:  All right.  I'm reserving decision on the

2    issue of the electronic messages and will direct the government

3    to furnish them to the Court for very view.  And I trust they

4    have already been produced to the defendant?

5    MR. LAROCHE:  Yes, your Honor.

6    THE COURT:  Okay.

7    Now, with regard to the statements allegedly made by

8    defendant to Leonel Rivera while in custody, the defendant

9    raises an argument under the *Massiah* case and its progeny,

10   urging that statements that were directed or encouraged or

11   induced by the government through the use of, in this case, a

12   cooperating witness, are inadmissible without the protections

13   of *Miranda*.

14   Let me hear from the defendant on anything you want to

15   add to what you have asserted in your brief.

16   MR. MOSKOWITZ:  Your Honor, I think the brief speaks

17   for itself on this point.  I would just point out that it is

18   the government's responsibility, and that's both the United

19   States Attorney's office and the Bureau of Prisons, both of

20   which are part of the Department of Justice, to protect the

21   defendant's Sixth Amendment right.  It is unconceivable that

22   Leonel Rivera just happens to be in the same unit with access

23   to the defendant just as he was to a defendant in another case

24   and that people that he, you know -- you know, he doesn't

25   approach them, they approach him.  The whole thing is -- first

L2C2RamC kjc

                of all, the story is ridiculous, but the point is that the

                government, whether it is the Bureau of Prisons or the U.S.

                Attorney's office or the Department of Justice, if somebody

                messes up, if the U.S. Attorney's office asks for a separation

                order, the Bureau of Prisons doesn't comply with it, and a

                cooperating witness, knowing that it's in his interest to do

                so, then solicits or attempts to solicit information from a

                defendant in violation of a Sixth Amendment right, the party

                that should be penalized is not the defense, but the

                government.  It is absolutely unfair that Mr. Rivera was

                allowed to be in Mr. Fuentes Ramirez's unit and that he

                approached him.  And after being told don't speak to witnesses

                that -- or to defendants that you are cooperating against, he

                did it again.  The 3500 material makes it very clear that he

                was told not to do it, and he did.

                        And even under the government's reading of how it

                happened, even based on what Mr. Rivera told them happened, if

                the defendant approached him, he knew he should walk away.  He

                knew, you know, because that's what he was told, don't talk to

                defendants that you are cooperating against, and he didn't do

                it.

                        THE COURT:  All right.  Let me hear from the

                government.

                        MR. LAROCHE:  Your Honor, Mr. Gutwillig is going to

                handle this argument.

L2C2RamC kjc

1          THE COURT:  Thank you.

2          MR. GUTTWILLIG:  Yes, your Honor.

3          I think, beyond what's contained in our reply brief, I

4   would just note that the characterization "did it again" is not

5   accurate.  The government specifically notes in its reply brief

6   that the episode that counsel is referring to with Fredy

7   Najera, in his plea agreement, he said that he, Mr. Najera,

8   with respect to these alleged statements made to the

9   cooperating witness, that he willfully attempted to obstruct

10  and impede the administration of justice by making false

11  assertions about this witness.

12          Also, I think it is probative of the fact that the

13  government certainly did not direct or encourage the witness to

14  do this, which is really the inquiry here, by the fact that, on

15  the day that the defendant arrived at the MCC, the government

16  put in its separation request.

17          So, you know, all of these things, kind of what the

18  government highlighted in its reply brief, make it very clear

19  that this was not a Sixth Amendment violation, that the witness

20  was not seeking to elicit this, and also that there is no basis

21  to say that he has done it before, and that argument also is

22  without merit.

23          THE COURT:  Okay.  At this stage of the game there is

24  not evidence of government inducement or procurement or

25  encouragement of questioning, and so I'm not going to exclude

1    the evidence at this juncture.  Of course I will keep an open

2    mind if any evidence emerges tending to establish that there

3    was government inducement and encouragement.  That becomes a

4    whole different story then.

5              Let me ask if there is anything further regarding --

6    there is a statement in your brief about arguments or, rather,

7    statements allegedly made by CC-7, a Central American drug

8    trafficker, to Leonel Rivera, and they are in the background

9    section of the government's memo.  I'm not sure what these

10   statements are, whether the government is offering them, and

11   what precisely the defendant's position is.

12             First of all, is the government offering such

13   statements?

14             MR. LAROCHE:  Your Honor, we believe we have

15   identified the coconspirator statements through CC-7 that we

16   are seeking to admit through Leonel Rivera, specifically in

17   that point that we have already reviewed with your Honor.

18             To the extent that changes, we will of course update

19   everyone and make sure that folks are on notice that we seek to

20   admit additional statements.  But at this point we have

21   identified specifically the ones that we are focused on.

22             THE COURT:  All right.  Then I don't know that there

23   is anything else for me to rule on with regard to that,

24   Mr. Moskowitz.

25             What else can I help the parties with?

L2C2RamC kjc

1         MR. MOSKOWITZ:  Your Honor, I think there is an issue

2     which, you know, I gather we won't know until the government

3     attempts to offer them, but in reviewing the government's brief

4     in preparation for the hearing today, I did note that the

5     government appears to be preparing to offer statements made by

6     the defendant in his postarrest statement.  I have spent the

7     time before this argument reviewing the defendant's postarrest

8     statement, and I guess until we see how the evidence comes in,

9     I can't object, because obviously they are statements of the

10    defendant, but I would note that the statements that the

11    government highlights in its brief were cherry-picked from a

12    lengthy postarrest interrogation, and the government is

13    attempting to argue that the statements that they picked were

14    somehow incriminating.  But in the -- if the Court were to read

15    the context, you know, the entire interview, and see the

16    context of the statements, your Honor would see that they are

17    not incriminating at all, but in fact exculpatory.  So a

18    defendant admitting that he knows somebody sounds like it is

19    incriminating.  But when the defendant explains how he knows

20    that person, and it is in a completely innocent context, that

21    is not incriminating.

22         So if the Court is going to allow in the statements at

23    some point that the government proposes to offer as part of --

24    you know, as part of the defendant's postarrest statement, I

25    think the Court needs to see the entire statement and allow in

1    the statements that give that supposed admission context.

2           THE COURT:  Well, I don't have to deal with that at

3    this stage, and I will certainly be open to hear what everyone

4    has to say, but this is not an uncommon situation that, in the

5    course of postarrest interviews, the government wants to offer

6    very little and the defendant wants to put in everything

7    because the defendant's intent in making the statement was not

8    to confess to a crime, but to exculpate himself from the crime.

9    And generally speaking, the defendant doesn't get to put in

10   exculpatory statements in the course of the postarrest

11   interview.  And specifically here, if the defendant admits he

12   knows someone, that admission is simply that he knows someone.

13   It is unfair argument for the government to say that, as you

14   saw from the postarrest statement, the defendant admitted that

15   he was in drug trafficking transactions with the individual,

16   that's unfair argument not supported by the evidence.  The

17   statement simply is that he knows the person.  So I will have

18   to see everything in context, but it is -- the law does not

19   support the proposition that the defendant gets to put in the

20   exculpatory parts from a postarrest statement generally

21   speaking.  Now, there can be contexts where other portions come

22   in under the rule of completeness, but I will have to look at

23   that in context.

24           All right.  Anything else, Mr. Moskowitz?

25           MR. MOSKOWITZ:  No, your Honor.  I would note that,

L2C2RamC kjc

1   just in terms of the practicality of the trial on March 8, we

2   received notice yesterday of the Court's directive that

3   everybody coming into the building now has to have -- be

4   wearing two masks or K95s or KN95s.  I don't know how that

5   works.  I know that I have enough trouble talking and

6   projecting with one mask and doing it with two masks and being

7   understood and having everything clear is obviously something

8   that I am very concerned about.  And just to be perfectly -- to

9   be perfectly frank, Judge, having had to perform with -- you

10  know, speak in public with masks on, I know that that is

11  incredibly difficult and incredibly draining on the person

12  doing the talking and doing -- and two masks make that even

13  more difficult.  The new ruling gives me even greater concern

14  about how this -- how the mechanics of this trial will work.

15          I am also obviously concerned about the jurors'

16  ability to deal with the new mandate and whether jurors will

17  have two masks, have the ability to constantly bring in two

18  masks, whether the Court is going to provide them.  I don't

19  know any of the details of that, but I am concerned about the

20  most recent order of the Court just as to the practicality of

21  proceeding.

22          THE COURT:  Thank you, Mr. Moskowitz.

23          I am able to shed a bit of light on all of this due to

24  a position I hold within the Court relative to the conduct of

25  jury trials during the pandemic.

L2C2RamC kjc

1          So, number one, the Court will provide a second mask

2     to jurors during the *voir dire* process, make sure they are all

3     double-masked.  However, when we get past *voir dire* and we have

4     seated jurors, they will be given the -- the present plan is

5     that they will be given the opportunity -- the Court will

6     supply them with N95 or KN95 masks and suggest to them that

7     they can either wear them or the double-masking, which, again,

8     we will provide the double masks.  So we already are on top of

9     that.

10          The good news or the relief that I want you to be

11     aware of and know about is -- and I have conducted two jury

12     trials under pandemic conditions -- when you are addressing the

13     jury in your opening statement or your closing argument or when

14     you are questioning a witness on cross-examination or on

15     direct, you will not be wearing a mask.  We have constructed

16     and tested with our experts a booth which has atop it a HEPA

17     filter which extracts and cleans the air inside the booth, and

18     you will be speaking into a microphone and you will not be

19     wearing any mask whatsoever.

20          It is true that if you are at counsel table and the

21     government asks a question, you would have your double mask on

22     or your N95 on, and you would need to state that you object to

23     the question.  You don't even need to rise.  You can do it from

24     a seated position.  But you would state that you object.  But

25     the number of circumstances where you would be speaking for any

L2C2RamC kjc

1    prolonged period wearing a mask of any kind should not happen

2    at all.  So that is the report I have to give you based on my

3    information, but thank you for raising your concerns and feel

4    free to share the information that I have just given you.

5               MR. MOSKOWITZ:  I appreciate that your Honor.  That is

6    very helpful.  Thank you.

7               THE COURT:  All right.  Is there anything else from

8    the government?

9               MR. LAROCHE:  No.  Thank you, your Honor.

10              THE COURT:  All right.  Well, I want to thank all

11   counsel for the very fine briefing and organization and

12   presentations, which makes my job a lot easier, so thank you,

13   and we are adjourned.

14              Thank you, Madam Interpreter and thank you to my court

15   reporter.  Thank you again, and we are adjourned.

16              MR. MOSKOWITZ:  Thank you, Judge.

17              MR. LAROCHE:  Thank you, your Honor.

18                              oOo

19

20

21

22

23

24

25