

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 19, 2021

<u>Via ECF</u>
The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

Re:   <u>United States v. Geovanny Fuentes-Ramirez,</u>
      <u>S6 15 Cr. 379 (PKC)</u>

Dear Judge Castel:

We write in response to the defendant's March 18, 2021 letter moving to strike the 900 and 1100 series of Government exhibits, which were obtained from the iCloud account and Instagram account, respectively, of the defendant's son, Geovanny Daniel Gutierrez (previously referred to as "CC-14"). The defendant moves to strike these exhibits on the grounds that they are irrelevant, inflame the passions of the jury, and do not qualify as co-conspirator statements pursuant to Rule 801(b)(2)(E). On March 2, 2021, the Government submitted an 11-page letter memorandum setting forth multiple bases for the admission of the 900 and 1100 series of exhibits. (Dkt. 253). The defendant never responded to that submission and has not addressed the Government's arguments in his letter of yesterday.

As detailed below, the Government has established at trial by a preponderance of the evidence that Gutierrez was a member of the charged conspiracies and directly connected to the charged crimes. *United States v. Coplan*, 703 F.3d 46, 81 (2d Cir. 2012) ("When faced with a question of conditional relevance, the district court should 'examine[] all the evidence in the case and decide[] whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence.'" (quoting *Huddleston v. United States*, 485 U.S. 681, 690 (1988)); *see also id.* at 82 (determining whether a statement has satisfied the requirements as a co-conspirator statement under Rule 801(d)(2)(E) "are 'preliminary questions of fact' to be resolved by the district court under a preponderance of the evidence standard." (quoting *Bourjaily v. United* States, 483 U.S. 171, 175 (1987)). The evidence established, among other things, that Gutierrez (i) communicated with Commissioner Martinez about the murder of the defendant's bodyguards; (ii) communicated with Commissioner Martinez and Comanche about the defendant's cocaine laboratory and the boat mechanic who was murdered by the defendant; (iii) maintained a copy of the cellphone delete codes that were also provided by Commissioner Martinez to the defendant; (iv) maintained copies of photographs of himself with key co-conspirators, including Commissioner Martinez and Juan Orlando Hernandez; (v) maintained photographs of machineguns and handguns that were identical

or at least similar to those used by the defendant in furtherance of his drug-trafficking activities; (vi) maintained photographs of bulk quantities of U.S. currency, consistent with drug-trafficking proceeds; (vii) posted photographs online of firearms and a frog or "sapo," which is used pejoratively to identify someone as a "snitch" who provides information to law enforcement, at least some of which were posted after the defendant's arrest; and (viii) communicated with another individual about the defendant's crimes, including by acknowledging that the Government had identified all of the defendant's co-conspirators in its motions *in limine*.

For these reasons, as well as those discussed below and in the Government's March 2 filing, the defendant's motion is without merit and should be denied.

## The Trial Evidence Relating to Gutierrez

The evidence at trial established that the defendant was a violent, large scale drug trafficker who worked with others to import thousands of kilograms of cocaine to the United States. The defendant was able to succeed on such a monumental scale by (i) relying on the protection of high-ranking police officials, such as Commissioner Martinez who communicated with the defendant about codes to delete evidence and check whether the defendant's phone was being intercepted, and military officials, such as Comanche and General Ponce Fonseca, who provided the defendant with a green military grade weapon; (ii) possessing and using machineguns and handguns to protect his drug shipments and engage in acts of violence, including the vicious murder of a boat mechanic; (iii) commanding bodyguards armed with military grade weapons; (iv) operating a cocaine laboratory in Cerro Negro, Honduras that he used to manufacture hundreds of kilograms of cocaine per month; and (v) bribing politicians, including Juan Orlando Hernandez, the current president of Honduras.

The trial evidence connected Gutierrez to each of these aspects of the defendant's crimes. Similar to the defendant, Gutierrez maintained contact information for numerous co-conspirators including at least a dozen law enforcement or military officials, as well as Fuad Jarufe and Jarufe's family. (GX 926, 927). Gutierrez communicated with these individuals about the defendant's crimes. For example, electronic communications from Gutierrez's iCloud account reflect that, in April 2015, Gutierrez and Commissioner Martinez discussed the defendant's bodyguards being killed in the Cortes Department, and Gutierrez agreed to look into it. (GX 933-T). Similarly, the defendant's prison emails reflect that Gutierrez communicated with Commissioner Martinez and Comanche about the defendant's cocaine laboratory and the mechanic's murder in an effort to obtain non-public information about those matters. (GX 701-09). Gutierrez also maintained the same cellphone delete codes provided by Commissioner Martinez to the defendant as a note in Gutierrez's iCloud account. (GX 928).

Gutierrez also maintained photographs reflecting the defendant and Gutierrez's close relationship with their co-conspirators and law enforcement, including photographs of (i) the defendant in a bulletproof vest and Honduran military beret (GX 917); (ii) the defendant and Gutierrez, with Gutierrez wearing a Honduran National Police hat (GX 1115); (iii) Gutierrez and Juan Orlando Hernandez (GX 915); and (iv) Commissioner Martinez and Juan Orlando Hernandez (GX 918). Also like the defendant, Gutierrez maintained numerous photographs of firearms, including machineguns; extended magazines and tactical military vests; and bulk quantities of U.S.

currency. The firearms and extended magazines depicted in those photographs are the same types of weaponry the defendant and other co-conspirators used to transport huge quantities of cocaine and engage in acts of violence. (Tr. 286, 308, 371).

Finally, after the Government filed its initial motions *in limine* on January 8, 2011, Gutierrez exchanged messages with another co-conspirator in which Gutierrez (i) stated that "all of [the defendant's co-conspirators] are there" in the motion, including Pluto, who Gutierrez referred to by his first name, and Juan Orlando Hernandez, who Gutierrez referred to as "Juancho"; and (ii) acknowledged that the Government had correctly identified the green rifle that the Honduran military had given to the defendant. (GX 935-T).

## **Photograph and Video Exhibits In the 900 and 1100 Series are Admissible**

The majority of exhibits in the 900 and 1100 series are photographs and videos of (i) ammunition and firearms, such as machineguns and handguns; (ii) large quantities of U.S. currency; and (iii) the defendant and/or co-conspirators, including Gutierrez, Juan Orlando Hernandez, and Commissioner Martinez. (GX 901-932, 1101-1125). Photographs are not "statements," and thus, the rule against hearsay provides no basis for their exclusion. *United States v. Moskowitz*, 581 F.2d 14, 21 (2d Cir. 1978) ("The sketch itself, as distinguished from . . . statements about it, need not fit an exception to the rule against hearsay because it is not a 'statement' and therefore can no more be 'hearsay' than a photograph identified by a witness."). Rather, the issue is whether the photographs and videos were relevant and, therefore, admissible. The photographs and videos plainly satisfied that threshold requirement and were properly admitted at trial.

Photographs of the defendant in a bulletproof vest with handcuffs and a Honduran military beret, and Gutierrez in a Honduran National Police hat, were relevant and admissible to show the defendant's significant connections with Honduran military and law enforcement officials, which witnesses explained the defendant used to commit his drug-trafficking and weapons offenses. (Tr. 284-85, 287-88, 291, 294-95, 694, 702-03). Similarly, photographs of Juan Orlando Hernandez with Gutierrez and Commissioner Martinez were admissible to show the close relationships between Juan Orlando Hernandez and his co-conspirators, including the defendant. (Tr. 294-95, 691-701; Dkt. 253, at 7 (citing case)).

Moreover, as with the defendant's cellphone, evidence of Gutierrez's possession of firearms, ammunition, and large quantities of U.S. currency was admissible as proof of the drug-trafficking and § 924 charges. (*See* Feb. 12, 2021 Tr. at 20-21). The fact that Gutierrez, who has apparent knowledge of the defendant's drug-trafficking activities at the cocaine laboratory and knowledge of the defendant's bodyguards, has photographs and videos of the same or nearly identical firearms that the defendant possessed to engage in drug trafficking was probative of the defendant's guilt as to the substantive and conspiracy weapons offenses charged in Counts Two and Three. Similarly, photographs of the defendant's coconspirators possessing firearms and large quantities of U.S. currency was direct evidence of the conspiracy element of Count One, the defendant's drug-trafficking crime. (Dkt. 253, at 8 (citing cases)). As an alternative, photographs of firearms from Gutierrez's accounts were admissible under Rule 404(b) because Gutierrez is the

defendant's son and the photographs show the defendant's opportunity to access firearms in connection with his drug-trafficking crimes. (*Id.* (citing cases)).

Finally, admitting the photographs and videos was not unduly prejudicial. The evidence at trial has established that the defendant participated in at least five murders, some of which involved torture, and that he possessed an arsenal of military grade weapons to further his drug-trafficking crimes and engage in acts of violence. Evidence of Gutierrez's possession of firearms and large amounts of currency did "not involve conduct any more sensational or disturbing than the crimes with which" the defendant was charged. *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). Accordingly, this evidence was not unfairly prejudicial under Rule 403.

### Communication Exhibits In the 900 and 1100 Series are Admissible

In addition to the photographs in the 900 and 1100 series, the Government also admitted translations of two chats between Gutierrez and others from Gutierrez's iCloud account (GX 933-T, 935-T), as well as translations of text overlaid on Instagram photographs posted by Gutierrez (GX 1109-T, 1110-T, 1111-T, 1112-T, 1113-T, 1124-T, 1125-T). The chats and photograph translations are relevant and admissible under the hearsay rules.

*First*, in GX 933-T, which reflects a communication that occurred in April 2015, Gutierrez and Commissioner Martinez discussed how the defendant was "dangerous" and "capable of anything," as well as how the defendant's bodyguards had been murdered in the Cortes Department. This chat was admissible to show the existence of the charged conspiracy involving the defendant, Commissioner Martinez, and Gutierrez; the close relationship between the defendant and Commissioner Martinez; the fact that the defendant and his co-conspirators were receiving non-public information from law enforcement; and to corroborate Leonel Rivera who testified about the defendant's acts of violence and use of armed bodyguards in furtherance of his drug-trafficking activities.

This chat was also admissible under the hearsay rules as co-conspirator statements pursuant to Rule 801(d)(2)(E). As detailed above, the Government established by a preponderance of the evidence that the defendant, Commissioner Martinez, and Gutierrez were members of the charged drug-trafficking and weapons conspiracies. The statements at issue were also in furtherance of that conspiracy. Commissioner Martinez's statements were designed to assure Gutierrez that he had the continued support of the defendant, to inform Gutierrez of the status of the conspiracy and the dispute with another individual, and to provide Gutierrez with information about the defendant's murdered bodyguards.

For similar reasons, the statements are admissible under Rule 804(b)(3) because the declarants are unavailable and their remarks would be probative of their guilt were they to stand trial on drug-trafficking or weapons charges. Commissioner Martinez and Gutierrez are believed to be located abroad, outside the Government's subpoena power; and, even if subpoenaed, would likely invoke their Fifth Amendment rights if questioned under oath regarding their activities. The statements were also against the penal interest of the declarants because the Statements "implicated [the declarants] in [illegal] activity," and each declarant "would not have made the statement unless he believed it to be true." *United States v. Dupree*, 870 F.3d 62, 80 (2d Cir. 2017).

*Second*, in GX 935-T, which reflects a communication that occurred in January 2021, Gutierrez and CC-15 discussed the defendant and his co-conspirators, including by acknowledging that the Government had identified the defendant's co-conspirators in its motions *in limine* and that the Government "know[s] about the green rifle," referring to the green military grade weapon that Jose Sanchez testified was provided to the defendant by the Honduran military. These chats are admissible to, among other things, show the existence of the charged conspiracy involving the coconspirators identified in the Government's motions *in limine* ("All of them are there"); demonstrate Gutierrez's knowledge of the identities of other members of the conspiracy, including Pluto ("Edgar") and Juan Orlando Hernandez ("Juancho"); show Gutierrez and CC-15's knowledge that some of the defendant's co-conspirators, including Melvin Sandres and Pluto, had been murdered ("are they bringing them back to life"); and corroborate Jose Sanchez's testimony about the defendant receiving a green military grade weapon from the Honduran military. The chats were also admissible under Rule 804(b)(3) because Gutierrez and CC-15, who is also believed to be in Honduras, are unavailable and their remarks would be probative of their guilt were they to stand trial on drug-trafficking or weapons charges.

*Finally*, several photographs from Gutierrez's Instagram account contain overlaid text that reflect Gutierrez's comments on the photographs. These include, among others, photographs of (i) bulk U.S. currency with the comment, "Sunday Funday" (GX 1109-T); (ii) two assault rifles and two handguns with the comment, "The prettiest thing you will see today" (GX 1110-T); and firearms with frog emojis, which as noted is a derogatory term for "snitch" (GX 1113-T and 1124-T). For the reasons discussed above, these photographs are relevant and admissible as direct evidence of the charged crimes. The overlaid text is also admissible as co-conspirator statements under Rule 801(d)(2)(E) because Gutierrez was furthering the conspiracy by boasting to others about the success of Gutierrez's activities and his perceived power. For similar reasons, the statements are admissible under Rule 804(b)(3) because Gutierrez's remarks would be probative of his guilt were he to stand trial on drug-trafficking or weapons charges.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully submits that the Court should deny the defendant's motion to strike the 900 and 1100 series of exhibits.

          Respectfully submitted,

          AUDREY STRAUSS
          United States Attorney


by: \_\_/s/_____
     Jacob Gutwillig
     Matthew Laroche
     Michael D. Lockard
     Assistant United States Attorneys
     (212) 637-2215 / 2420 / 2193

cc: Defense counsel of record (by ECF)