L3MKRAM1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                         15 CR 379 (PKC)

GEOVANNY FUENTES RAMIREZ,

           Defendant.

------------------------------x

                                  New York, N.Y.
                                  March 22, 2021
                                  10:58 a.m.

Before:

                HON. P. KEVIN CASTEL,

                                District Judge
                                And A Jury

                    APPEARANCES

AUDREY STRAUSS,
    United States Attorney for the
    Southern District of New York
MICHAEL LOCKARD
JACOB GUTWILLIG
    Assistant United States Attorneys

AVRAHAM CHAIM MOSKOWITZ
EYLAN SCHULMAN
    Attorneys for Defendant

ALSO PRESENT:

MIRTA HESS, Spanish Interpreter
GABRIEL MITRE, Spanish Interpreter
BRIAN FAIRBANKS, DEA Agent

                (In open court; jury not present)

                THE COURT:  Good morning.

                So, a little bit of background:  At least for the time I've been on this court, when exhibits go into the jury room, they are inspected by both sides, an index of the paper exhibits accompany the documents, and they go into the jury room with the index.  Here, we have electronic exhibits, so, with paper exhibits, a juror could, in essence, thumb through the pile and see what the juror wanted.  So, an index is somewhat less compelling when it sits on top of a stack of papers because one could thumb through the stack of papers, something that's not possible when the exhibits are loaded onto a hard drive.

                On Friday, my staff showed defense counsel the government's list of admitted exhibits, and asked whether there was any objection to it going into the jury room, and I was advised that there was because there had been no request from the jury.

                There's now been a request from the jury.  I don't understand why there would have been an objection to this list, which effectively made it not literally impossible but exceedingly difficult to locate exhibits on a hard drive if they don't even know what the exhibit is, all they know is a number.

                So, it says, "We need the directory of the pieces of

L3MKRAM1

1 evidence in the computer," signed by number 3, the foreperson.
2 So, I ask again, is there an objection from the
3 defense?
4 MR. MOSKOWITZ: No, your Honor.
5 THE COURT: All right.
6 So, please have the list. It's been shown to you,
7 yes?
8 MR. MOSKOWITZ: Yes, your Honor.
9 THE COURT: All right.
10 Madam Deputy, if you'll arrange for it to go into the
11 jury room, I appreciate it.
12 Is there anything further before we adjourn?
13 MR. MOSKOWITZ: No, your Honor.
14 THE COURT: All right. Thank you, all, very much.
15 I'm sorry this was necessary.
16 (Recess pending verdict)
17 THE COURT: I've had marked as Court Exhibit 17 a note
18 from the jury, which reads: "What is source of
19 Exhibit No. 613?" And it's been shown to counsel.
20 Is there an agreement on the response?
21 MR. LOCKARD: Yes, your Honor. I think the parties
22 are in agreement that the answer to the note is that the record
23 does not identify the source of Exhibit 613.
24 THE COURT: How did it get into evidence?
25 MR. LOCKARD: So, 613 was shown to a witness,

1  Mr. Rivera, who recognized it as similar to a weapon that he
2  had owned and similar to weapons that he had seen the defendant
3  with.  And then it was offered and received on that basis, so,
4  essentially, it's a demonstrative though not explicitly
5  identified as such in the trial record.
6           THE COURT:  All right.
7           You're in agreement, Mr. Moskowitz?
8           MR. MOSKOWITZ:  Yes, there's nothing in the record as
9  to the source of the photograph, yes.
10          THE COURT:  All right.
11          Would it be appropriate for the Court to add a second
12  sentence, that said:  "The exhibit was offered and received
13  during the testimony of Mr. Rivera as a demonstrative exhibit"?
14          MR. LOCKARD:  No objection from the government.
15          MR. MOSKOWITZ:  No objection, your Honor.
16          THE COURT:  All right.
17          MR. LOCKARD:  And for the benefit of the Court, that's
18  on page 310 of the transcript.
19          THE DEPUTY CLERK:  Another note.
20          THE COURT:  Let's just wait and see whether this can
21  be printed out, and then we'll deal with the second one.
22          (Pause)
23          THE COURT:  Court Exhibit 18 reads:  "Can witness
24  Sanchez's testimony be read back to us?"
25          My recollection is that the witness' testimony was --

1  I don't know whether it was an hour and a half or two hours,
2  and then there was cross.  So, I propose to respond requesting
3  that the jury be as specific as possible.  If somebody could
4  help me out with perhaps the number of pages, that would be of
5  help, so I could make it clear that the entire testimony is of
6  length.
7              In the meantime, Madam Deputy, if you could make sure
8  that each side is in agreement.  If I could have a second copy
9  of that; you should mark an identical copy, except for the fact
10 that it doesn't bear my signature, as Exhibit 19.
11             Let me just read it into the record.  It reads:  "In
12 response to the jury's question, the Court responds that the
13 record does not identify the source of Government Exhibit 613.
14 It was offered and received during the testimony of Mr. Rivera
15 as a demonstrative exhibit."
16             Is it acceptable to everyone?
17             MR. MOSKOWITZ:  That is acceptable to the defense,
18 your Honor.
19             MR. LOCKARD:  And to the government.
20             THE COURT:  Okay.  Give that to Flo to be marked.
21             Do we know how many pages --
22             MR. MOSKOWITZ:  I'm working on it, Judge.
23             THE COURT:  Okay, that's fine.  Thank you.
24             MR. MOSKOWITZ:  So, Mr. Schulman advises it's 646 to
25 800, Judge.  There's some colloquy --

1    THE COURT:  Say the number again.
2    MR. MOSKOWITZ:  646 to 800, but there's some colloquy,
3  obviously --
4    THE COURT:  Understood, understood.  That's helpful.
5    So, the proposed answer would be:  "With respect to
6  the testimony of Mr. Sanchez, the testimony is about 150 pages
7  in length.  Can the jury please be more specific in their
8  request?"
9    MR. LOCKARD:  That sounds good.  Thank you, Judge.
10    MR. MOSKOWITZ:  That's acceptable, Judge.
11    THE COURT:  All right.
12    ***(Pause)
13    THE COURT:  I'm going to require the attorneys to do
14  that on a contingent basis.  If they're not able to be more
15  specific and they want everything, we will have it, and if it's
16  marked, you could prepare a transcript, I take it, that could
17  then go into the jury room.
18    (Discussion off the record)
19    THE COURT:  Flo, if you print it out and mark it as
20  the next court exhibit.
21    Is that acceptable to the government?
22    MR. LOCKARD:  Yes, your Honor.
23    THE COURT:  Defendant?
24    MR. MOSKOWITZ:  Yes, your Honor.
25    THE COURT:  So, both of those notes will be brought

1  into the jury room now.  We are in recess, and please work on

2  the Sanchez transcript so we have it at the ready.  I don't if

3  it has to go.

4           MR. MOSKOWITZ:  Thank you.

5           THE COURT:  Thank you, all, very much.

6           (Recess)

7           THE COURT:  The jury's note came back, marked on Court

8  Exhibit 22, or 21, which is now also marked as Court Exhibit

9  22, and it reads:  "The beginning of his testimony in the

10 meeting between Fuentes and Hernandez discussing protection and

11 transportation or drugs."  And this is Court Exhibit 21,

12 related to the -- actually related to Exhibit 613 but there was

13 the intervening note, relating to Mr. Sanchez, and I construe

14 this as relating to that intermediate note concerning

15 Mr. Sanchez.

16          So, what have the parties agreed or not agreed on?

17          MR. LOCKARD:  Your Honor, the parties have agreed on

18 the portion of Mr. Sanchez's direct testimony that is

19 responsive to the note.

20          THE COURT:  Which is?

21          MR. LOCKARD:  Which is transcript page 690, line 21

22 through page 697, line 24 --

23          THE COURT:  Okay.

24          MR. LOCKARD:  -- and also page 699, line 14 through

25 700, line 2.

```
 1                THE COURT:  Okay.
 2                MR. LOCKARD:  We have also agreed on a portion of
 3     cross-examination that is relevant to that testimony.
 4                THE COURT:  Which is?
 5                MR. LOCKARD:  Which is transcript page 753, line 1
 6     through 757, line 15.
 7                THE COURT:  Okay.  And that's where the agreement
 8     ends?
 9                MR. LOCKARD:  That's where the agreement ends.
10                THE COURT:  All right.
11                Let me hear from Mr. Moskowitz.  What pages are you
12     asking for?
13                MR. MOSKOWITZ:  Judge, the only other pages we were
14     asking for is page 717, line 11, to page 721, line 9, which
15     relate to when that first meeting took place.
16                THE COURT:  All right.
17                What day of the trial was that?  Does anybody know?
18                MR. LOCKARD:  The 16th.
19                MR. MOSKOWITZ:  16, I think.
20                THE COURT:  All right.
21                MR. MOSKOWITZ:  The 16th.
22                THE COURT:  I don't know that I will be able to find
23     this because I don't know that I have page numbers on here.
24                I can get to the transcript for March 16th.  I'm
25     trying to find out where in the transcript --
```

L3MKRAM1

1             MR. MOSKOWITZ:  Judge, I can give it to you on my
2    laptop.
3             THE COURT:  Good.  Thank you.
4             MR. MOSKOWITZ:  Give me one second.
5             MR. LOCKARD:  We have a hard copy, but it's four pages
6    to a page so it may not be the easiest thing to read.
7             THE COURT:  Well, let's see what Mr. Moskowitz comes
8    up with.
9             MR. MOSKOWITZ:  Here we go.
10            THE COURT:  Is that from LiveNotes?
11            MR. MOSKOWITZ:  It's from the official transcript we
12   got at night.
13            THE COURT:  Okay.  Then I'll look at it this way.
14   Thank you.
15            (Pause)
16            THE COURT:  Is it only the highlighted portions?
17            MR. MOSKOWITZ:  No, that's what I went through when I
18   was preparing.
19            THE COURT:  All right.  So where does it end?
20            MR. MOSKOWITZ:  721, line 9.
21            THE COURT:  Okay, got it.
22            (Pause)
23            THE COURT:  All right, I'll allow in 717, line 11 to
24   721, line 9.
25            Can you prepare those without colloquy?

1                MR. LOCKARD:  We're working on that right now.
2                THE COURT:  All right.
3                And if you will give it to my law clerk, who, if there
4     is an agreement, will have it marked.  We have to have it
5     copied and marked, a copy here for the court record and then
6     one to go to the jury room.  And if there's not agreement, then
7     I will referee any disagreement.
8                Is that acceptable to the government?
9                MR. LOCKARD:  It is, your Honor.
10               THE COURT:  To the defendant?
11               MR. MOSKOWITZ:  Yes, your Honor.  Thank you.
12               THE COURT:  Okay, good.  We are adjourned.  Thank you.
13               (Recess pending verdict)
14               (Jury present)
15               THE COURT:  Good afternoon, ladies and gentlemen.
16               JURY MEMBERS:  Good afternoon.
17               THE COURT:  Will the foreperson please identify --
18    yes, thank you.
19               I have an envelope.  It contains the verdict; is that
20    correct?
21               THE FOREPERSON:  That's correct, sir.
22               THE COURT:  Is it unanimous?
23               THE FOREPERSON:  Yes, sir.
24               THE COURT:  And is it signed and dated by you as
25    foreperson?

1    THE FOREPERSON:  Yes, sir.

2    THE COURT:  Thank you.

3    "Judge, we have reached a verdict.  Depending on when
4    we are called to court, please be aware that Juror No. 9 needs
5    to leave by 4:00 p.m."  Well, that's more than an hour and 15
6    minutes from now.

7    I'm handing the verdict to the courtroom deputy, who
8    will take the verdict from the foreperson.  For this, I will
9    ask you to stand.

10   THE DEPUTY CLERK:  As to Count One, narcotics
11   importation conspiracy, guilty or not guilty?

12   THE FOREPERSON:  Guilty.

13   THE DEPUTY CLERK:  Has the government proven beyond a
14   reasonable doubt that the offense charged in Count One involved
15   mixtures or substances containing a detectable amount of
16   cocaine?

17   THE FOREPERSON:  Yes.

18   THE DEPUTY CLERK:  Has the government proven beyond a
19   reasonable doubt that the offense charged in Count One involves
20   five or more kilograms of mixtures or substances containing
21   cocaine?

22   THE FOREPERSON:  Yes.

23   THE DEPUTY CLERK:  Count Two:  Possession of machine
24   guns and destructive devices, guilty or not guilty?

25   THE FOREPERSON:  Guilty.

1    THE DEPUTY CLERK:  Has the government proven beyond a
2    reasonable doubt that the offense charged in Count Two involves
3    a machine gun?
4    THE FOREPERSON:  Yes.
5    THE DEPUTY CLERK:  Has the government proven beyond a
6    reasonable doubt that the offense charged in Count Two involves
7    a destructive device?
8    THE FOREPERSON:  No.
9    THE DEPUTY CLERK:  Count Three:  Conspiracy to possess
10   machine guns and destructive devices, guilty or not guilty?
11   THE FOREPERSON:  Guilty.
12   THE DEPUTY CLERK:  Has the government proved beyond a
13   reasonable doubt that the offense charged in Count Three
14   involves a machine gun?
15   THE FOREPERSON:  Yes.
16   THE DEPUTY CLERK:  Has the government proven beyond a
17   reasonable doubt the offense charged in Count Three involves a
18   destructive device?
19   THE FOREPERSON:  No.
20   THE COURT:  You may be seated.
21   Madam Deputy, will you please poll the jury.
22   THE DEPUTY CLERK:  Juror No. 1, is that your verdict?
23   JUROR:  Yes.
24   THE DEPUTY CLERK:  Juror No. 2, is that your verdict?
25   JUROR:  Yes.

```
 1                THE DEPUTY CLERK:  Juror No. 3, is that your verdict?
 2                JUROR:  Yes.
 3                THE DEPUTY CLERK:  Juror No. 4, is that your verdict?
 4                JUROR:  Yes.
 5                THE DEPUTY CLERK:  Juror No. 5, is that your
 6      verdict -- or, Juror No. 6, is that your verdict?
 7                JUROR:  Yes.
 8                THE DEPUTY CLERK:  Juror No. 7, is that your verdict?
 9                JUROR:  Yes.
10                THE DEPUTY CLERK:  Juror No. 8, is that your verdict?
11                JUROR:  Yes.
12                THE DEPUTY CLERK:  Juror No. 9, is that your verdict?
13                JUROR:  Yes.
14                THE COURT:  Wait, wait.  Juror No. 6, 7 -- 8 I didn't
15      hear.
16                JUROR:  Yes.
17                THE COURT:  Okay, thank you.
18                Juror No. 9?
19                JUROR:  Yes.
20                THE DEPUTY CLERK:  Juror No. 10, is that your verdict?
21                JUROR:  Yes.
22                THE DEPUTY CLERK:  Juror No. 11, is that your verdict?
23                JUROR:  Yes.
24
25                THE DEPUTY CLERK:  Juror No. 12, is that your verdict?
```

         JUROR:  Yes.

         THE DEPUTY CLERK:  Juror No. 13, is that your verdict?

         JUROR:  Yes.

         THE DEPUTY CLERK:  The jury has been polled.

         THE COURT:  All right.  The numbering is a little different; we have 12 jurors but our last juror maintained her old number, of 13.

         Any objection to my discharging the jury?  From the government?

         MR. LOCKARD:  No, your Honor.

         THE COURT:  From the defendant?

         MR. MOSKOWITZ:  No, your Honor.

         THE COURT:  All right.  Ladies and gentlemen, what I am about to say to you I would say to you word for word the same even if your verdict had been very different than the one you returned.

         I sit here in awe of your service.  This court, the Southern District of New York, has been in existence for 232 years.  We've summoned jurors through the influenza pandemic of 1918, through the First and Second World Wars, the Great Depression, the events of 9/11, and yet on the morning of March 8th, 2021, we didn't know whether we would have jurors who were qualified and willing to serve, but you answered that call to service.  You could have evaded it, you could have gotten out of it — it wouldn't have been very difficult,

particularly in pandemic conditions, we would have deferred your jury service — but you served.

As the years go by, as your life unfolds, I hope you'll look back on this moment in time as among your proudest in your whole life, that when you were asked to serve, you did so, and you worked hard. You came every day, you came on time, you worked with shortened lunch breaks, you did what you had to do. It's not always easy to listen; I know it's hard, and it is hard. And you did make sacrifices with your family and your laundry and your chores and grocery shopping and work that you had to do before or after work or on a weekend, all those things you had to catch up with — paying bills, et cetera, your life was disrupted — you're commuting to a place that you have no connection to, because this is service, and you served.

There was a judge by the name of Edward Weinfeld who sat on this court. And he would say something very peculiar at the end of a jury trial, kind of in the remarks that I'm making right now. He would say: I will not thank you. Why? You didn't come here to do me a favor or the government or the defendant a favor. You served; service is noble, it's something to be proud of and admired, but it's not something that I will cheapen with a mere "thanks, everybody, for coming"; no, it's much more important than that.

I want you to think with me for a moment what kind of world this would be if we let folks who wore black robes decide

on guilt or innocence.  There would always be questions in the mind of someone — a family member or a defendant or maybe someone working for the prosecution — who is this man or woman wearing the black robe?  Who appointed them?  What's their agenda?  Where do they hope to go?  Are they looking for a promotion or something?  Did that somehow seep into the process?

It's human nature to have those questions go through your mind, even if you have the most fair and honest and impartial person you could imagine; there would be somebody who would have that.  But when 12 strangers, who have never met one another, and probably would have lived out their entire lives without ever meeting one another, come together in a country where 12 people can't agree on a pizza topping, and listen to the evidence and civilly discuss it, discuss it with respect for one another's views, and then come to a unanimous verdict, that's as close as we're going to get to pure justice in this very imperfect world that we live in.

Now, a couple of other things:

We're coming up on the warm weather, we're coming up on a summer where, if you're fortunate enough to get vaccinated, maybe you'll be having a hotdog or a hamburger with your facemask off — it's going to happen eventually — and you're going to be talking to a relative, a friend, a neighbor. I don't want you to be mean to anybody, but it may come up in

conversation that you served on a jury, or it may come up that they just got a jury notice, and you may hear them say what their plan is to get out of jury service. As I said, don't be unkind or mean to anybody, but in your own way, let them know that you don't find that one bit funny, because now you know how serious and important jury service is. You may have thought you knew, but now you really know.

The other thing I'd like you to do is — life is a little bit of strange and unusual in this way — if we cross paths again, on a subway train or at Madison Square Garden or at a baseball game — we'll be back in events like that, I'm sure — if you come across me, I hope you will remind me how we first met.

Now, some of the folks who have served on juries in this courthouse and in my courtroom have followed the following rule. Remember, I told you, you can discuss the case with anybody you choose now — tell them everything you heard and saw, et cetera — but a lot of jurors follow this rule: They'll tell you what happened in the courtroom, what the witnesses said, what the setup was, what the judge said, the prosecutor, what everybody had to say in the case, except during deliberations what was said from one juror to the other, they choose to keep private, out of respect for the other people they served with. Now, that's not a command on my part. I'm only telling you what decision other jurors in your situation

1  have made; you're free to do what you want.

2  And now, ladies and gentlemen, it is with the utmost
3  respect for you, admiration for your service, that I tell you,
4  you are now discharged from service and you are free to return
5  to your life, with great respect.

6  We would stand at this point, but I'm advised not to
7  do that in the present situation; otherwise, we would be
8  standing for you.

9  (Jury dismissed)

10  THE COURT:  All right.  The verdict has been marked as
11  Court Exhibit 24.  And the note that came with it I'll have
12  marked as Court Exhibit 24-A.  It was in the same envelope as
13  the verdict sheet.

14  Mr. Moskowitz, if you need time on your motions, I
15  would just ask that you send a letter request.  It will give
16  you a chance to look at the rule, to make a written
17  application, and I will endeavor to promptly rule on it, but I
18  think it's a better form than doing it sort of on the fly, if
19  that's all right with you.

20  MR. MOSKOWITZ:  That's fine, your Honor.  Thank you.
21  THE COURT:  All right.
22  I will ask my deputy to give us a provisional date on
23  sentencing.  I say provisional; it will be the sentencing date
24  unless for some reason probation can't get the report done or
25  there are other reasons why it has to be adjourned.

1       But, Madam Deputy, if you could give us a sentencing
2  date?
3       THE DEPUTY CLERK:  June 22nd, at 3:00 p.m.
4       THE COURT:  All right.
5       Anything further from the government?
6       MR. LOCKARD:  No, your Honor.
7       THE COURT:  Is there anything further from the
8  defendant?
9       MR. MOSKOWITZ:  No, your Honor.  Thank you.
10      THE COURT:  All right.
11      Thank you, all, very much.  We are adjourned.
12      I see the defendant has his hand up?  You should speak
13 to your lawyer first.
14      Do you want an interpreter?
15      (Pause)
16      MR. MOSKOWITZ:  Your Honor, with the Court's
17 indulgence and the indulgence of the marshals, Mr. Fuentes' son
18 arrived here this morning.  He has not seen any of his family
19 members in over a year since he's been arrested.  If the
20 marshals could just give him a couple of minutes to sit here in
21 the courtroom and talk to him, that would be very much --
22      THE COURT:  In the seat where he is now?
23      MR. MOSKOWITZ:  Yes, yes.
24      THE COURT:  That's entirely up to the marshals.  If
25 they are comfortable with that, I would appreciate it.  It

1  would be appreciated by me if you could accommodate that for a
2  reasonable period of time, recognizing that the defendant will
3  remain seated where he is and the son will remain where he is
4  in the courtroom.  All right?
5             With that, we are adjourned.
6             MR. MOSKOWITZ:  Thank you, your Honor.
7             (Adjourned)